*State of Maryland, et al. v. Vadim Roshchin, et al.*
No. 10, September Term, 2015


**Torts – False Arrest and False Imprisonment.** A defendant may be liable for the torts of false arrest or false imprisonment only if the plaintiff was deprived of liberty without legal justification. A warrantless arrest is legally justified when a police officer makes the arrest as a result of a misdemeanor committed in the officer's presence. Maryland Code, Criminal Procedure Article, §2-202.

**Transportation – Aviation – Police Authority to Arrest for Criminal Violations of Statutes and Regulations Relating to Aviation.** A provision of the aviation title of the Transportation Article of the Maryland Code states that a police officer "shall" issue a citation and "need not" arrest an individual who commits a misdemeanor under that law in the officer's presence. That provision does not negate the officer's discretion under the Criminal Procedure Article and the common law to arrest for a misdemeanor committed in the officer's presence. Maryland Code, Transportation Article, §5-1104; Criminal Procedure Article, §§2-201, 2-202.

**Transportation – Aviation – Regulations – Posting as a Prerequisite to Enforcement.** A regulation adopted by the Maryland Aviation Administration ("MAA") under §5-426 of the Transportation Article, which authorizes MAA to adopt regulations concerning parking, the movement of traffic, safety, and the preservation of order at an airport, must be publicly posted at the airport in order to be enforceable. By contrast, the statutory authority for MAA to adopt a regulation requiring commercial transportation services to obtain and display permits are §5-208 and §5-408 of that Article and such a regulation need only have been published in accordance with the requirements of the State Administrative Procedure Act and State Documents Law to be enforceable. Maryland Code, Transportation Article, §§5-204, 5-208, 5-408, 5-426; State Government Article, §10-101 *et seq*.

Circuit Court for Anne Arundel County
Case No. 02-C-12-167294
Argued October 5, 2015

IN THE COURT OF APPEALS

OF MARYLAND

September Term, 2015

No. 10

---

STATE OF MARYLAND, ET AL.

v.

VADIM ROSHCHIN, ET AL.

---

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts
Harrell, Glenn T., Jr.
(Retired, Specially
Assigned),

JJ.

---

Opinion by McDonald, J.
Adkins, J., dissents.

---

Filed: January 26, 2016

State law authorizes Petitioner Maryland Aviation Administration ("MAA") to adopt regulations governing commercial ground transportation services at Baltimore Washington International Thurgood Marshall Airport ("BWI"). The law classifies a violation of those regulations as a misdemeanor. While a police officer is generally authorized to arrest an individual who commits a misdemeanor in the officer's presence, a statute directs a police officer who observes a misdemeanor violation of an MAA regulation to issue a citation for the violation and also provides that an officer "need not" make an arrest, except in certain circumstances. This case concerns whether an officer retains authority to arrest for such an offense even when the officer "need not" do so.

At the time of the incident giving rise to this case, Respondent Vadim Roshchin was employed as a driver by Respondent American Sedan Services, Inc. ("American Sedan"). American Sedan is a commercial transportation service that has a permit from MAA to provide ground transportation services at BWI. In February 2010, Mr. Roshchin was picking up passengers at the airport without the required permit in his possession. Providing commercial transportation services at BWI without displaying a permit as required by an MAA regulation is a misdemeanor. Maryland Transportation Authority ("MdTA") police, who happened to be conducting a special enforcement effort of the permit requirement that night, arrested Mr. Roshchin and impounded American Sedan's car. Both were released early the next day. The criminal charges against Mr. Roshchin were ultimately dropped.

Two years later Mr. Roshchin and American Sedan sued MAA, MdTA, the MdTA police, and the State for false arrest, false imprisonment, and related claims. They asserted that the arrest of Mr. Roshchin and impoundment of the car without the issuance of a citation were unlawful, because issuing a citation is mandatory and, in these circumstances, exclusive of an arrest. They also argued that the regulation had to be posted at the airport to be enforceable and that it had not been posted.

We hold that nothing in the MAA regulation or the Transportation Article deprives a police officer of the general authority under Maryland law to arrest an individual who commits a misdemeanor in the presence of the officer. Thus, the arrest of Mr. Roshchin and the impoundment of the American Sedan car for non-compliance with the permit requirement were lawful. The regulation requiring commercial transportation services to display permits need only have been published in accordance with the State Administrative Procedure Act and State Documents Law and was not required to be posted at the airport as a prerequisite to its enforcement. On the basis of the undisputed facts, the claims of Mr. Roshchin and American Sedan fail as a matter of law.

## I

## Background

### A. *Regulation of Ground Transportation at BWI*

MAA operates BWI, a State-owned airport. Maryland Code, Transportation Article ("TR"), §5-412. MAA has established certain rules concerning the discharge and pick-up of passengers by commercial transportation services on the roadways

adjacent to the airport terminal. MAA enters into contracts with certain transportation companies, which pay fees for the privilege of using the "inner roadway" near the baggage claim to pick up passengers who have not previously arranged for transportation.

Certain other categories of commercial vehicles are authorized to use the "outer roadway" under permits issued by MAA. One such category is for-hire commercial transportation services that arrange in advance to pick up arriving passengers. COMAR 11.03.01.05-1A(6) ("Regulation 05-1A(6)").[1] These services are prohibited from picking up a passenger who has not made an arrangement with the service in advance. Regulation 05-1C(1).

MAA regulations require operators of commercial vehicles conducting business at BWI to obtain and display a permit from the MAA. Regulation 05-1A(1), (3), C(5). A commercial operator that falls within this category must display the permit on the rearview mirror of the vehicle. There is no dispute that the failure to obtain or display the permit is a misdemeanor, although the parties disagree as to the statute that sets forth that offense.[2]

---

[1] All of the regulations cited in this opinion appear in a chapter of the Code of Maryland Regulations designated as "COMAR 11.03.01." For readability we will refer to each regulation by its individual number and refrain from repeating the chapter designation in each instance – *i.e.*, COMAR 11.03.01.05-1 will be referenced as Regulation 05-1.

[2] Mr. Roshchin and American Sedan assert that the relevant misdemeanor is defined in TR §5-427(b), which provides for a penalty of a fine of up to $500. The State entities contend that the relevant statute is TR §5-1105(a), which states that the penalty is up to 90 days imprisonment, a $500 fine, or both. *See also* Regulation 10D(3). Although the applicable criminal penalty is irrelevant to this civil case, for

3

The MdTA Police Force, a law enforcement agency created by State law,[3] provides law enforcement services at BWI. In particular, MdTA police officers have the powers "of a peace officer and a police officer" under State law on airport property. TR §4-208(a)(2), (b). Among other things, MdTA police officers enforce the rules relating to the pick-up and discharge of passengers by commercial vehicles.

From time to time, in response to numerous complaints about the unauthorized operation of commercial vehicles at BWI,[4] MAA and the MdTA police have conducted "enforcement initiatives" at the airport to deter such illegal activity. During such initiatives, police officers stop operators of commercial vehicles to determine whether they are operating legally. Initially, officers conducting enforcement initiatives issued citations to first time offenders and arrested recidivists. However, the MdTA police eventually concluded that arresting all violators was a more effective deterrent. One such arrest resulted in this case.

---

other reasons we later determine that TR §5-1105(a) defines the relevant misdemeanor. *See* Part II.B of this opinion below.

[3] TR §4-208.

[4] One of the supervising MdTA police officers testified at a deposition in this case that unauthorized commercial vehicles often do not have the required license from the Public Service Commission, do not have automobile insurance coverage, and charge exorbitant fees to customers. He stated that commercial transportation services that operated legally at the airport under contract or permit became concerned about losing business to the illegal operators, which sometimes resulted in confrontations at the airport.

4

**B.    *The Arrest and Impoundment***

The circumstances of the arrest of Mr. Roshchin and the impoundment of American Sedan's vehicle are undisputed.  During the evening of February 23, 2010, MAA and the MdTA police were conducting an initiative at BWI focused on enforcement of the regulations requiring commercial transportation services to obtain and display a permit.  As part of that effort, police officers stopped commercial vehicles to check for permits.

On that evening, Mr. Roshchin was operating a commercial vehicle on behalf of American Sedan to make a pre-arranged pick-up of two passengers at BWI. American Sedan had a valid permit for the vehicle,[5] but Mr. Roshchin had left it in a different American Sedan vehicle.[6]  As a result, he was picking up the passengers without displaying a permit, in violation of the regulations.

At around 7:40 p.m. on that night, officers stopped Mr. Roshchin and determined that he was not displaying a permit.  They arrested him and impounded American Sedan's vehicle.  Mr. Roshchin was processed at the MdTA police facility

---

[5] While the putative expiration date of American Sedan's permit had long passed, there is no dispute that it remained valid.  At the time of the enforcement initiatives in 2009 and 2010, many permits – including permits held by American Sedan – apparently stated on their face that they expired on June 30, 2006 or June 30, 2007.  Consistent with a notice sent to permit holders by MAA's Acting Manager of Parking and Transportation in June 2009, MdTA police officers recognized the validity of such permits.  (As we shall see later in this opinion, Mr. Roshchin and American Sedan also rely on a statement in the Acting Parking Manager's June 2009 notice that failure to display a permit "could result in a $50.00 fine."  *See* Part II.A.2 of this opinion below.)

[6] A permit is not assigned to a particular vehicle and a transportation service may transfer a permit among vehicles that are listed on its application for the permit.

5

at BWI and then transported with other arrestees to a District Court Commissioner in Anne Arundel County. The Commissioner issued a charging document alleging that Mr. Roshchin had violated Regulation 05-1 and released him on his own recognizance early the next morning. American Sedan recovered its vehicle that day after paying a $150 towing fee. The State's Attorney for Anne Arundel County eventually decided not to prosecute Mr. Roshchin.

## C. *The Litigation*

Two years later, in February 2012, Mr. Roshchin and American Sedan filed a complaint in the Circuit Court for Anne Arundel County against the State of Maryland, MAA, MdTA, and the MdTA police (collectively, "the State"). The counts seeking relief for Mr. Roshchin alleged false arrest, false imprisonment, and a violation of Article 24 of the Maryland Declaration of Rights – the due process clause of the Maryland Constitution. The counts seeking relief for American Sedan asserted tort claims for trespass to chattels and tortious interference with business relations.

The State moved for summary judgment on the basis that the arrest was supported by probable cause and did not violate Mr. Roshchin's rights under Article 24, and that the impoundment of the American Sedan vehicle was appropriate in light of the lawful arrest.[7] The Circuit Court granted summary judgment for the State on all counts, relying on Maryland Code, Criminal Procedure Article ("CP"), §2-

---

[7] Mr. Roshchin and American Sedan also moved for partial summary judgment contending that they were entitled as a matter of law to a ruling that a violation of Regulation 05-1A(1) is not an offense for which an alleged violator may be arrested or incarcerated. The Circuit Court did not explicitly rule on that motion, although its disposition of the State's motion effectively denied it.

202, which authorizes a police officer to make a warrantless arrest for a misdemeanor committed in the presence of the officer.

Mr. Roshchin and American Sedan appealed. The Court of Special Appeals reversed the grant of summary judgment. 219 Md. App. 169, 100 A.3d 499 (2014). The court concluded that the arrest did not violate Mr. Roshchin's constitutional rights because the arresting officer had probable cause to believe that Mr. Roshchin had committed a misdemeanor in the officer's presence. Nonetheless, it also held that the officer lacked legal justification for the arrest. In particular, the court concluded that TR §5-1104, which provides that an officer "shall prepare" a citation and "need not" arrest an individual charged with a misdemeanor under the State aviation law, limited the officer's discretion to take Mr. Roshchin into custody. The court further reasoned that, because TR §5-1104 is the more specific statute, it prevailed over the general arrest authority conferred on police officers by CP §2-202. The court also held that the regulation that Mr. Roshchin had allegedly violated was required to be posted to be enforceable and that there was a factual dispute as to whether the regulation had been properly posted, rendering summary judgment inappropriate. For the same reasons, the court also reversed the Circuit Court's award of summary judgment on the two tort claims of American Sedan.

We granted the State's petition for a writ of *certiorari* to consider whether there was legal justification for the arrest of Mr. Roshchin and whether posting of the regulation affects that determination.

## II

### Discussion

At issue before us is whether the State is entitled to summary judgment on Mr. Roshchin's claims of false arrest and false imprisonment and American Sedan's related tort claims.[8] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and [a] party is entitled to judgment as a matter of law." Maryland Rule 2-501(a). Because the decision turns on resolution of a legal issue, a trial court's grant of summary judgment is "subject to a non-deferential review on appeal." *Muskin v. State Dep't of Assessments & Taxation*, 422 Md. 544, 554, 30 A.3d 962 (2011).

### A. *Whether There was Legal Justification to Arrest Mr. Roshchin that Precludes Potential Tort Liability in this Case*

#### 1. The relationship between tort liability and police authority to arrest a driver and impound a vehicle

For a plaintiff to succeed on a false arrest or false imprisonment claim, the plaintiff must establish that the defendant deprived the plaintiff "of his or her liberty without consent and without legal justification." *Okwa v. Harper*, 360 Md. 161, 190, 757 A.2d 118 (2000) (internal quotation marks omitted). One possible legal justification for an arrest is set forth in CP §2-202(b), which provides that a police officer "may arrest without a warrant a person who commits … a … misdemeanor in

---

[8] Mr. Roshchin did not file a cross-petition concerning the Court of Special Appeals' decision to affirm the award of summary judgment in favor of the State on his claim under Article 24 of the Maryland Declaration of Rights. Thus, the constitutional claim is not before us.

8

the presence or within the view of the police officer." This provision codifies the common law concerning the authority of a peace officer to make an arrest in those circumstances. *See* D. Kauffman, *The Law of Arrest in Maryland,* 5 Md. L. Rev. 125, 155-57 (1941). In other words, a police officer who observes a person committing a misdemeanor and makes a warrantless arrest of the offender ordinarily will not be liable for false arrest or false imprisonment, because CP §2-202 provides legal justification for the deprivation of liberty.

Likewise, one is not liable for trespass to chattels when one "is acting in discharge of … authority created by law to preserve the public safety, health, peace, or other public interest, and [one's] act is reasonably necessary to the performance of [one's] duty …" Restatement (Second) of Torts §265. Police have authority to "seize and remove … vehicles impeding traffic or threatening public safety and convenience." *Wilson v. State*, 409 Md. 415, 430 n. 5, 975 A.2d 877 (2009). Pursuant to Regulation 05(B)(2), a vehicle may not be left unattended at curbside at BWI, because it poses a threat to public safety and an impediment to public convenience. There is no exception to this rule when the vehicle is unattended because the driver was arrested. Thus, police have authority to seize and remove a vehicle left unattended at curbside at BWI as a result of a lawful arrest and their doing so does not give rise to liability for trespass to chattels.

To prove tortious interference with business relations one must show, among other things, that the defendant acted with malice. *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 71, 485 A.2d 663 (1984). Malice, in this context, means an act that is

9

wrongful and without legal justification. *Id.*; *Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 764, 511 A.2d 492 (1986) (citing *Stannard v. McCool*, 198 Md. 609, 617, 84 A.2d 862 (1951)). A lawful arrest of a driver and impoundment of an unattended vehicle constitutes legal justification for an act that would otherwise be tortious interference with business relations.

In short, there is ordinarily no liability for false arrest, false imprisonment, trespass to chattels, or tortious interference with business relations when a police officer observes a driver committing a misdemeanor, arrests the driver, and impounds the now-unattended vehicle that has been left where it may not be left unattended.

2. Whether TR §5-1104 Precludes an Arrest in these Circumstances

Mr. Roshchin and American Sedan argue that the ordinary rule does not apply in this case because the arresting officer failed to issue a citation to Mr. Roshchin and, in any event, the officer's authority was limited in these circumstances to issuing a citation instead of effecting an arrest. They also contend that MAA itself has interpreted its own regulation to preclude an arrest for failure to display a permit.

Mr. Roshchin and American Sedan rely on TR §5-1104. They argue that this statute makes the issuance of a citation a prerequisite to an arrest and, in the circumstances of this case, precludes an arrest. TR §5-1104 provides that, when a person is "apprehended by a police officer" for a misdemeanor violation of any provision of Title 5 of the Transportation Article – the aviation title of that Article – or for the misdemeanor "violation of any rule, regulation, or order adopted under" Title 5, "the officer *shall* prepare and sign a written citation." TR §5-1104(a)

10

(emphasis added). If the person charged gives "his written promise to appear in court by signing the form for written promise on the citation prepared by the police officer," then "the officer *need not* take the person into physical custody for the violation unless" one of two conditions is met: either "[t]he person charged does not furnish satisfactory evidence of identity," or "[t]he officer has reasonable grounds to believe the person charged will disregard a written promise to appear." TR §5-1104(c) (emphasis added).

Mr. Roshchin and American Sedan argue that the issuance of a citation pursuant to TR §5-1104(a) and the opportunity for the alleged violator to provide a written promise to appear in court are a prerequisite for an officer to have discretion to arrest under TR §5-1104(c) – and then only if one of the two conditions in that subsection is met. Because the arresting officer did not issue a citation to Mr. Roshchin and because neither of the conditions mentioned in TR §5-1104(c) were present, they argue, the officer had no authority to arrest Mr. Roshchin.

This poses a question of statutory construction. In construing a statute, one begins with the "plain meaning" of the statutory language and may end there if the meaning is plain enough.[9] But even when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to

---

[9] *W.R. Grace & Co. v. Swedo*, 439 Md. 441, 453, 96 A.3d 210 (2014) ("we begin our inquiry with the words of the statute and, ordinarily, when the words of the statute are clear and unambiguous, according to their commonly understood meaning, we end our inquiry there also") (citation and internal quotation marks omitted).

11

eliminate another version of legislative intent alleged to be latent in the language.[10] It is also a common maxim of statutory construction that related statutes governing the same subject are to be construed together and harmonized.[11]

*Statutory Text*

CP §2-202 provides that an officer "may arrest" for a misdemeanor committed in the officer's presence. The verb "may" indicates that an officer has the authority to arrest, but need not do so. *Rockwood Casualty Ins. Co. v. Uninsured Employers Fund*, 385 Md. 99, 119, 867 A.2d 1026 (2005) ("may" commonly understood to confer discretion). The first clause of the key sentence in TR §5-1104(c) states that an officer "need not" arrest for a misdemeanor violation of a regulation adopted under the aviation title of the Transportation Article if the alleged violator provides a written promise to appear in court. The phrase "need not" expresses that an arrest is not mandatory in these circumstances – apparently a restatement of the discretion that an officer has under the general arrest authority granted by CP §2-202.[12] The second clause of that sentence qualifies that general statement and appears to restrict the officer's discretion to forgo an arrest in certain circumstances – *i.e.*, when the alleged

---

[10] *Mayor & City Council of Baltimore v. Chase*, 360 Md. 121, 131, 756 A.2d 987 (2000).

[11] *120 West Fayette Street LLLP v. Mayor and City Council of Baltimore*, 413 Md. 309, 331, 992 A.2d 459 (2010).

[12] Notably, the Legislature elected not to use the defined phrase "may not" which has "a mandatory negative effect and establishes a prohibition." Maryland Code, General Provisions Article, §1-203.

violator fails to provide satisfactory evidence of identity or there are reasonable grounds to believe that the violator will not appear in court.[13]  There is no contention that either of those circumstances existed in this case and thus the officer had the usual discretion to arrest – or forgo an arrest – for a misdemeanor committed in the officer's presence.  Hence, under the statutes, the officer could, but did not need to, arrest Mr. Roshchin.

In asserting that TR §5-1104 precludes an arrest in these circumstances, Mr. Roshchin and American Sedan argue that TR §5-1104, which requires the issuance of a citation, is more specific than CP §2-202, which authorizes a police officer generally to arrest for misdemeanors committed in an officer's presence.  They also note that CP §2-201(b) specifically says that the subtitle that contains CP §2-202, which grants the authority to arrest, "does not deprive a person of the right to receive a citation for ... a criminal violation as provided by law or the Maryland Rules."  Thus, they conclude, both because the specific governs the general and because CP §2-201(b) explicitly protects the right to receive a citation, Mr. Roshchin had a right to receive a citation in lieu of being arrested.

It is true that "'when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute.'" *Maryland-Nat'l Capital Park & Planning Comm'n v. Anderson*, 395 Md. 172, 194,

---

[13] Obviously, the two conditions triggering an obligation to arrest depend to a great extent on the officer's judgment – whether the evidence of identity is "satisfactory" and whether there are "reasonable grounds" to believe the individual will fail to appear.

909 A.2d 694 (2006) (quoting *State v. Ghajari*, 346 Md. 101, 116, 695 A.2d 143 (1997)).

It is also true that TR §5-1104(a) states that an officer "shall" issue a citation for a

misdemeanor violation of regulations under the aviation title of the Transportation

Article.[14]  Typically the issuance of a citation is an alternative to making an arrest

for an alleged offense.  But citation and arrest are not mutually exclusive.  That much

is clear from TR §5-1104 itself, which directs an officer in certain circumstances to

arrest an alleged violator to whom the officer has issued a citation.  *See* TR §5-

1104(c).[15]  Hence, these statutes do not conflict. Because the canon of construction

---

[14] The State argues from context and legislative history that the word "shall" in the statute is directory, not mandatory.  *See In re Najasha B.*, 409 Md. 20, 32, 972 A.2d 845 (2009) (discussing the guidelines for whether the word "shall" is to be interpreted as mandatory or directory).  While resolution of that issue might affect the course of a criminal prosecution, we need not resolve whether "shall" is directory or mandatory to answer the questions presented in this case.

[15] Mr. Roshchin and American Sedan note that TR §5-1104(c) provides that a person who has received a citation "may give his written promise to appear in court" by signing the citation.  They argue that this is "rendered meaningless" if the police have discretion to arrest the person even if the person has signed the citation form. TR §5-1104(c) may be given its full effect even if the alleged violator is arrested; the alleged violator need only be given the opportunity to sign the form and promise to appear in court.  A willingness to sign the form and promise to appear may be to a person's advantage even if it does not avoid arrest, because, for example, it may affect a judicial officer's decision whether to release the individual and what, if any, conditions to impose.

Mr. Roshchin and American Sedan also observe that a citation can be an alternative charging document to a statement of charges, and that, when an offender is arrested without a warrant, "unless an information is filed in the District Court, the officer who has custody of the defendant shall . . . cause a statement of charges to be filed against the defendant in the District Court." Maryland Rule 4-211(b)(2).  The charges are then given to the defendant at the first court appearance. Maryland Rule 4-213(a)(2).  Asserting that a statement of charges would be duplicative of a citation, Mr. Roshchin and American Sedan say that it is anomalous to give a citation to a person who is to be arrested.  However, as noted in the text, TR §5-1104(c) explicitly

14

that the specific governs the general applies when two statutes conflict, but these statutes do not conflict, the more "specific" statute does not negate the authority granted by the more general statute.

While Mr. Roshchin may have had a right, pursuant to CP §2-201(b) and TR §5-1104(a), to receive a citation, that requirement has no bearing on whether the officer had authority to arrest him. A failure to satisfy the direction in TR §5-1104(a) to issue a citation does not detract from the authority provided in CP §2-202 — TR §5-1104 does not specify *any* consequences for the failure to issue a citation and so the officer still had discretion to arrest.

*Legislative History*

The legislative history of TR §5-1104 does not reveal a legislative purpose to trump the usual arrest powers of police officers. The predecessor of TR §5-1104 was originally enacted in 1949 as a part of the revised "Aeronautics" article of the Maryland Code (Article 1A) that authorized the enforcement of regulations adopted under that article. Chapter 422, §31, Laws of Maryland 1949. As originally enacted, the provision did not specifically address the issuance of citations or making arrests. The statute was recodified as Article 1A, §10-1001 when the article was revised in 1974. Chapter 363, Laws of Maryland 1974. The revised version of the statute stated

---

contemplates that an alleged violator who receives a citation will also be arrested – and presumably receive a statement of charges later in the proceeding. Moreover, the rules allow for several types of charging documents. *See* Maryland Rule 4-102(a) (defining "charging document"). It is not unusual for one charging document to be superseded by another in a particular case.

that a law enforcement officer who apprehends a violator "*may* prepare" a citation and that the officer was "not required" to take the alleged violator into custody unless the person could not furnish satisfactory evidence of identity or the officer had reasonable grounds to believe the person would disregard a promise to appear.

This language was in contrast to a contemporary provision of the Maryland Vehicle Code that stated that an officer "shall" issue a citation for certain violations, but that, in specified circumstances (including when there was failure to provide satisfactory evidence of identity or there were reasonable grounds to believe the person would disregard a provision to appear), the officer had discretion to issue a citation "or" arrest the alleged violator – apparently identifying issuance of a citation and arrest as alternative courses of action. Maryland Code, Article 66½, §16-107 (1974). The authority to issue a citation or to arrest for a violation of the Maryland Vehicle Code is now incorporated in TR §26-201 *et seq*.

In 1977, the aviation provision was recodified in its current location as part of the Transportation Article. Chapter 13, Laws of Maryland 1977. The code revisors indicated that the language had been revised to "conform more closely" to a similar provision in the Natural Resources Article ("NR"). *Id.* at pp. 248-49 (Revisor's Note). The referenced provision in the Natural Resources Article – NR §1-205 – as revised in 1973, had been "modeled" after the provision in Motor Vehicle Code mentioned above (Article 66½, §16-107). *See* Chapter 4, 1st Spec. Sess., Laws of Maryland 1973 at p. 466 (Revisor's Note). The revisors indicated that the language was included in

16

NR §1-205 "to elucidate the circumstances under which a Natural Resources Police officer *must* take a person into custody." *Id.* (emphasis added).

When one wanders through the weeds of this legislative history, it is evident that the code revisors were attempting to conform similar, although not identical, code provisions concerning the issuance of citations in relation to arrests that appeared in different articles of the Maryland Code. But it is equally evident that the provision of the Motor Vehicle Code, which specified circumstances in which an officer has discretion to arrest, is distinct from the other two provisions, which are phrased in terms of the circumstances under which an officer must arrest.

In any event, there is no indication in the legislative history that the General Assembly intended to abrogate the common law authority of a peace officer to arrest for a misdemeanor committed in the officer's presence – authority that the Legislature codified in the predecessor to CP §2-202 in 1969. Chapter 561, Laws of Maryland 1969. Thus, we are reluctant to construe TR §5-1104 as limiting that authority. *See Mummert v. Alizadeh*, 435 Md. 207, 214, 77 A.3d 1049 (2013) ("statutes in derogation of the common law are strictly construed, and it is not to be presumed that the Legislature … intended to make any alteration in the common law other than what has been specified and plainly pronounced") (quotation marks and citations omitted).

*Significance of the Acting Parking Manager's Letter*

Mr. Roshchin and American Sedan argue that MAA itself has interpreted Regulation 05-1 to be enforceable only by the issuance of a citation without an arrest,

17

and that this agency interpretation should be given deference. *See Maryland Bd. of Pub. Works v. K. Hovnanian's Four Seasons at Kent Island, LLC*, 425 Md. 482, 520, 42 A.3d 40 (2012) ("a reviewing court is required to give considerable deference to an agency's interpretation of its own regulation"). They point to correspondence by BWI's Acting Parking Manager directed to permit holders in June 2009. In that notice, which largely concerned the continuing validity of permits issued in previous years, the Acting Manager added a warning that permit holders could be fined if they failed to display their permits.[16]

The Acting Parking Manager's letter did not purport to be an interpretation of the enforcement provisions of the aviation title of the Transportation Article and said nothing, one way or the other, about police authority to arrest violators. Moreover, the authority to arrest in this case did not come from the MAA regulation, but rather CP §2-202 and the common law, which MAA does not administer. In any event, the reference to a fine appeared to be a reminder that there could be adverse consequences for failing to display a permit even if, as the letter detailed, the permit on its face appeared to have expired.

Finally, the degree of deference given to an agency interpretation depends on, among other things, "whether the agency (1) administers the statute it is interpreting, (2) developed its interpretation through a well-reasoned process, (3) in

---

[16] Mr. Roshchin also points to deposition testimony of the Acting Manager that, at the time he sent the letter, he believed that the penalty for failing to display a permit was limited to a fine. That may be because the MAA parking regulations provided for a $50 fine for failure to display a permit. *See* Regulation 05E(2)(k).

18

an adversarial proceeding or formal rule promulgation, and (4) consistently applied that interpretation for a 'long' period of time." *Bayly Crossing, LLC v. Consumer Protection Division,* 417 Md. 128, 137-38, 9 A.3d 4 (2010). None of these criteria appear to be met here; thus, even if the letter were considered an interpretation of the regulation, it would be accorded little weight.

3.    Summary

Thus, while statute directs an arresting officer to issue a citation for a failure to display a permit in violation of Regulation 05-1, the issuance of a citation was not a prerequisite to arresting Mr. Roshchin for that offense. Nor does the statutory direction to issue a citation preclude the making of an arrest in these circumstances. There is no dispute that the officer had probable cause to believe that a misdemeanor violation of the regulation was being committed in the officer's presence. Accordingly, there was legal justification for the arrest.[17]

## B.    *Whether a Factual Dispute about Posting of the Regulation Matters*

Mr. Roshchin and American Sedan contend that, even if the statutes permit an arrest for violation of Regulation 05-1, that regulation would not have been enforceable at the time of Mr. Roshchin's arrest if it was not posted at that time. The Court of Special Appeals agreed on that point and concluded that there was a factual dispute as to whether the regulation had been posted prior to the arrest, thereby precluding the award of summary judgment. 219 Md. App. at 179. The State contends that posting is immaterial to the enforceability of the permit requirement.

---

[17] We express no opinion on the wisdom of making an arrest for such an offense.

19

1.    Preservation of the issue

As an initial matter, Mr. Roshchin and American Sedan argue that this issue is not properly before this Court because the State failed to raise it in its petition for *certiorari*. We granted *certiorari* to determine whether a police officer has authority to make an arrest for the misdemeanor offense of failing to display a permit in violation of a regulation under the aviation title of the Transportation Article. If, as Mr. Roshchin and American Sedan contend, the answer may turn on whether the particular regulation has been posted, then the issue is implicitly contained within the question on which we granted *certiorari*. In any event, this Court retains discretion to consider such an issue, even if not expressed explicitly in the petition for *certiorari*,[18] and we shall do so in this case.

2.    Statutory authority for the regulation

MAA proposed to adopt Regulation 05-1 in 1998, together with two other new regulations and amendments to two existing regulations. *See* 25:25 Md. Reg. 1853 (December 4, 1998). While the regulatory action largely concerned the issuance of permits to commercial and courtesy vehicles to operate at BWI and the enforcement of the permit requirement, it also proposed amendments to existing regulations, one of which concerned parking and ground transportation at BWI.[19] The proposed new

---

[18] S*ee State v. Parker*, 334 Md. 576, 596-97, 640 A.2d 1104 (1994).

[19] In addition to adopting Regulation 05-1, the notice also proposed to adopt new regulations Regulation 05-2 (disciplinary proceedings concerning permit holders) and Regulation 05-3 (appeals of denials, suspensions, or revocations of permits). The notice also proposed amendments to Regulation 01 (Definitions) to add definitions of certain terms and Regulation 05 (entitled "Control of Landslide Traffic and Ground

20

regulations and amendments were ultimately adopted as proposed. 26:5 Md. Reg. 392 (effective July 1, 1999).

The notice listed four statutes as providing authority for the regulations that were the subject of the notice: TR §§5-204, 5-208, 5-408, and 5-426.[20] These statutes provide support for MAA to adopt regulations for various purposes, but some have only tangential, if any, relevance to the permit requirement in Regulation 05-1. We examine in turn each of those provisions, which are unchanged in pertinent part since the 1998 notice.

*TR §5-204.* This statute provides MAA with authority to adopt regulations that are "for the functioning and administration" of MAA. TR §5-204(d)(4). The regulations proposed in 1998 and adopted the following year dealt with the "functioning and administration" of MAA in the sense that they detailed the responsibilities of MAA's Division of Transportation and Terminal Services with respect to the issuance of permits to commercial transportation services and assigned the Division authority to conduct disciplinary proceedings as set forth in Regulation

Transportation") to delete permit-related provisions that had previously been codified in that regulation.

[20] Under the State Administrative Procedure Act, a regulation is not effective unless the agency cites the statutory authority for its adoption. Maryland Code, State Government Article ("SG"), §10-106. Regulations based on statutory authority – sometimes referred to as "legislative rules" – have the force and effect of law. *Maryland Port Administration v. Brawner Contracting Co.,* 303 Md. 44, 60, 492 A.2d 281 (1985). "Legislative rules" are sometimes contrasted with "interpretive rules" which simply set forth an agency's interpretation of a statute that it administers. *See Building Materials Corp. v. Board of Education,* 428 Md. 572, 591 & n. 25, 53 A.3d 347 (2012).

05-2. TR §5-204 does not set forth any special publication or posting requirement for such regulations. Thus, any regulations would be published and available in accordance with the State Administrative Procedure Act ("APA"), which provides for notice and publication of proposed regulations,[21] and the State Documents Law, which provides for the compilation of regulations in COMAR.[22]

*TR §5-208.* This provision broadly authorizes MAA to adopt regulations to carry out its duties under State law, to protect public safety, and to develop aviation in Maryland, among other things. TR §5-208(a).[23] It is likely to be authority for any

---

[21] *See* SG §10-101 *et seq.*

[22] *See* SG §7-201 *et seq.*

[23] In relevant part that statute provided, in 1998:

> (a)(1) The Administration may perform any act, issue and amend any order, adopt and amend any general or special rule, regulation, or procedure, and establish any minimum standard consistent with this title and necessary:
>
> (i)  To perform its duties and carry out the provisions of this title;
>
> (ii)  To protect the general public safety, the safety of person who operate, use, or travel in aircraft, the safety of person who receive instructions in flying or ground subjects that relate to aeronautics, or the safety of persons and property on land or water; or
>
> (iii)  To develop and promote aeronautics in this State.
>
> (2)  The Administration may also adopt rules and regulations by which a person engaging in aeronautics may be required to establish financial responsibility for any damage or injury that might be caused by the person.

22

regulation adopted by MAA consistent with its statutory responsibilities. TR §5-208 explicitly requires that MAA regulations be filed and "made available" in accordance with the State APA and the State Documents Law. TR §5-208(c). It also does not contain an additional posting requirement.

*TR §5-408.* This statute authorizes MAA to enter into contracts and other "arrange[ments]" regarding services provided by or at an airport. TR §5-408(a). It authorizes MAA to establish "terms and conditions" for those entities that MAA allows to provide services at an airport. TR §5-408(b). Under this provision, MAA clearly has authority to regulate those who provide commercial transportation services at BWI, which is no doubt why it was cited in the notice.[24] *See* TR 5-408(a)(1) (MAA "may … [g]rant to the person the privilege of … [s]upplying services … at the airport"). TR §5-408 does not explicitly authorize MAA to adopt regulations, but in carrying out the authority conferred by the statute, MAA is likely to establish generally applicable policies that fall within the definition of regulation under the State APA and would therefore be required to be expressed in regulation pursuant to the State APA.[25] This statute does not make posting a prerequisite to the exercise of the powers it confers on MAA.

---

TR §5-208(a) (1999).

[24] Indeed, the statute has been construed to provide MAA with state action immunity under the federal antitrust laws in connection with its regulation of commercial taxicabs at BWI. *See* 73 *Opinions of the Attorney General* 38 (1988).

[25] *See* SG §10-101(h).

*TR §5-426.* This statute authorizes MAA to adopt regulations regarding parking, traffic, safety, and order at an airport. TR §5-426(a). It explicitly requires that regulations adopted under the statute "be posted conspicuously in a public place at the airport"– a requirement that was in the statute in 1998. TR §5-426(b). It was likely included as part of the statutory authority for the regulatory action proposed in the 1998 notice because that notice proposed an amendment of Regulation 05, entitled "Control of Landside Traffic and Ground Transportation," which regulates parking at the airport in some detail (although the 1998 amendment did not concern parking). In addition, the new Regulation 05-1 cross-referenced the parking regulations in Regulation 05.[26]

3.    Whether posting was necessary to enforce the permit requirement

Mr. Roshchin and American Sedan have consistently focused solely on TR §5-426 as the source of authority for the permit requirement in Regulation 05-1 and asserted that, accordingly, the regulation had to be posted to be enforced. The State has been inconsistent during the course of this case as to the source of authority for the offense for which Mr. Roshchin was arrested – failure to display a permit. In the Circuit Court, the State apparently accepted the contention that TR §5-426 was the

---

[26] In particular, it provided that "[p]arking is only allowed in the public parking facilities subject to current parking rates and regulations." Regulation 05-1A(4). Similarly, the regulation prohibits a permit holder from violating the parking regulations. Regulation 05-1C(9).

Other portions of the regulations proposed in 1998 prohibit violation of State traffic laws, which arguably concerns the movement of traffic at the airport. *See* Regulation 05-1C(10)-(11).

source of authority for the regulation and that, accordingly, the penalty was set forth in TR §5-427(b) (violation of regulation adopted under TR §5-426 – other than a parking regulation – is a misdemeanor punishable by a fine up to $500). In holding that the arrest of Mr. Roshchin was justified on the basis of a misdemeanor committed in the officer's presence, the Circuit Court referred to the misdemeanor offense set forth in TR §5-427(b).

Before the Court of Special Appeals, the State continued to accept the premise that TR §5-426 was the pertinent statute underlying the offense, but argued that posting was not required for the regulation to be effective. It is thus unsurprising that the intermediate appellate court focused in its opinion on the posting requirement set forth in TR §5-426(b).

Before us, the State has taken the position that the permit requirement of Regulation 05-1 was not – and could not have been – adopted under TR §5-426. It now points to TR §5-208 and TR §5-408 as the bases for those portions of the regulation and, accordingly, cites TR §5-1105(a)[27] as defining the relevant misdemeanor for which Mr. Roshchin was arrested.

---

[27] That statute provides:

> (a)    Except as otherwise provided in this title, any person who violates any provision of this title or of any rule, regulation, or order adopted or issued under this title is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $500 or imprisonment not exceeding 90 days or both.

25

If this were a criminal prosecution, we might well hold the State to its original position and limit the potential criminal penalty to be imposed accordingly. A violation of TR §5-1105(a) potentially carries a term of incarceration while the penalty under TR §5-427(b) is limited to a fine. But this is not a criminal prosecution, both statutes define misdemeanors for which an arrest may be made, and the only issue before us is whether public posting in addition to the requirements of the State APA and State Documents Law is required for the permitting scheme established by the regulation to be effective.

In our view, TR §5-208 and TR §5-408 are the statutes that confer authority on MAA to adopt and enforce a permit requirement for commercial transportation services. Regulation 05-1 is essentially a licensing regulation that governs the authority of commercial and courtesy vehicles to operate at an airport under permits granted by MAA. The authority for its adoption is found in TR §5-408 (the statute that allows MAA to set up a permitting arrangement for ground transportation services) and TR §5-208 (the statute that authorizes MAA to adopt regulations to carry out its responsibilities) alone. Both of those statutes require only the normal notice and publication required by the State APA and Documents Law.

TR §5-426 supplies none of the authority necessary to adopt a regulation imposing a permitting regime. If MAA had *only* the rulemaking authority in TR §5-426 (concerning parking, traffic, etc.) it could not have created this permitting regime

---

*See also* Regulation 10D(3) ("Violators of any other of these regulations may be charged with a misdemeanor and, upon conviction …, shall be subject to a maximum fine of $500, or imprisonment for not more than 90 days, or both.").

in Regulation 05-1. On the other hand, if MAA did not have the rulemaking authority in TR §5-426, it still could have adopted the permit requirement for commercial transportation services under TR §5-208 and TR §5-408. Consequently, Regulation 05-1 was not "adopted under" TR §5-426.[28]

In our view, the citation of TR §5-426 – presumably because the regulation cross-references and incorporates parking and traffic laws adopted under the authority of TR §5-426 – does not import the posting requirement of TR §5-426 into the other statutes that provide authority for the permit requirement. Regulation 05-1 need not have been posted to be enforced. Thus, any factual dispute regarding posting is not material to the outcome of this case.

### III

### Conclusion

For the reasons set forth above, we hold that, on the basis of the undisputed facts, the arrest of Mr. Roshchin and impoundment of the American Sedan vehicle were lawful. The Circuit Court properly awarded summary judgment on the tort claims asserted in the complaint.

---

[28] If indeed TR §5-426 were the statutory authority for the licensing regime, we would agree with the cogent analysis of that statute by the Court of Special Appeals concerning the requirement of posting. *See* 219 Md. App. at 178-80. As noted above, the other statutory sources of authority for the 1998 regulatory proposal – in particular, those that related to the permit requirement – were apparently not brought to the attention of the intermediate appellate court.

**Judgment of the Court of Special Appeals Reversed. Costs in This Court and in the Court of Special Appeals to be Paid by Respondents.**

IN THE COURT OF APPEALS

OF MARYLAND

---

No. 10

September Term, 2015

---

STATE OF MARYLAND, et al.

v.

VADIM ROSHCHIN, et al.

---

Barbera, C.J.
Battaglia
Greene
Adkins
McDonald
Watts,
Harrell, Glenn T., Jr. (Retired,
   Specially Assigned),

JJ.

---

Dissenting Opinion by Adkins, J.

---

Filed: January 26, 2016

Respectfully, I dissent.  I would hold that the arrest was not valid for the reasons set forth in the opinion authored by Judge Kehoe for the Court of Special Appeals.