918 A.2d 506

Jeffrey CHANEY

v.

STATE of Maryland.

No. 91, Sept. Term, 2006.

Court of Appeals of Maryland.

March 14, 2007.

462

Katherine P. Rasin, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for appellant.

Celia Anderson Davis, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., on brief), for appellee.

Argued before RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned), LAWRENCE F. RODOWSKY (Retired, specially assigned), JJ.

WILNER, J.

Following his conviction by a jury in the Circuit Court for Baltimore City of second degree assault, appellant was sentenced to ten years imprisonment, all but five years of which

were suspended in favor of supervised probation for five years. Among the conditions attached to the probation were that appellant pay restitution to the victim in the amount of $5,000 within thirty months after his release from prison and that, upon his release, he become either employed full-time or enrolled as a full-time student. In this appeal, appellant contends that those two conditions attached to his probation are illegal.

We shall conclude that neither condition constitutes an illegal sentence for purposes of Maryland Rule 4–345(a), allowing a court to correct an "illegal sentence" at any time and without regard to waiver. Because of procedural lapses on appellant's part, we shall not address his complaint about the employment condition. We shall, however, exercise our discretion under Maryland Rule 8–131(a), address the restitution condition, and order that condition to be stricken on the ground that there was no request for restitution, no evidence to support the order, and, as a result, imposition of that condition constitutes plain error.

The facts underlying the offenses, which occurred on November 2, 2004, may be quickly summarized, as they have but tangential relevance to the issues now before us. The 78–year–old victim, Ernest Shiflett, was standing just outside his garage watching some workmen repair a sewer line adjacent to his home when appellant drove up, spoke briefly with the backhoe operator, then approached Shiflett, identified himself as a State construction inspector, handed Shiflett a business card, and told Shiflett that there were a lot of violations on the job and that he could shut the job down.[1] Shiflett knew appellant, having been friends with his father. They engaged in a brief conversation, during which appellant turned and accused two of the nearby workmen of not doing their job properly. At that point, Shiflett, believing that appellant was

---

1. The card suggested that appellant was a self-employed carpenter, which he later asserted to be the case, rather than a State inspector. Shiflett said that he did not look at the card but simply put it in his pocket.

drunk and looking for trouble, asked him several times to leave. According to Shiflett, appellant threatened to "tear [Shiflett] apart with [his] bare hands," whereupon Shiflett procured a baseball bat from his garage, because he was afraid that the younger and heavier appellant would hurt him.

There was some dispute as to what occurred next. Shiflett said that appellant initially retreated down the driveway but then turned and came back. Shiflett again demanded that he leave, and when appellant threatened to "rip me to pieces," Shiflett drew the bat back but claimed that he did not swing it. Appellant grabbed the bat, threw Shiflett to the ground, hit him in the back of the head with the bat, and was preparing to hit him again when two of the workmen intervened. Appellant was able to escape their grasp, get into his car, and flee. A bystander confirmed some of Shiflett's account but said that Shiflett had swung the bat at appellant after instructing him to leave, that he lost his balance, and that appellant then grabbed the bat and hit Shiflett in the head twice with it. The next day, appellant appeared at a police station and claimed that *he* had been assaulted by Shiflett, and he testified to that effect at trial. By finding appellant guilty of assault, the jury obviously credited Shiflett's version.

Because there was no request for any pre-sentence investigation, none was made; the trial ended on a Friday, and sentencing took place the following Monday, June 13, 2005. Although Mr. Shiflett was in court and orally presented a victim impact statement, there was no request for, and no discussion of, restitution. The State informed the court at sentencing that appellant had a criminal history that included convictions for resisting arrest, battery, malicious destruction of property, kidnapping, and a sexual offense. After hearing from Mr. Shiflett and from appellant, the court imposed the sentence noted. Appellant was presented with, and signed, the probation order and a separate judgment of restitution. He filed this appeal on June 27, 2005.

Three days later—within the time allowed under Maryland Rule 4–345(e) but after the appeal was filed—appellant filed a

motion for modification and reduction of sentence in which he complained specifically about the restitution order.[2] He pointed out that there had been no request for restitution and no evidentiary basis for the $5,000 award. Appellant made no specific complaint about the employment/student condition, although he did allege that he had built a substantial construction business, had several jobs pending, and was prepared to present evidence of his business. He asked that the sentence be reduced or suspended and that the court vacate the order of restitution. On July 14, 2005, the court denied the motion without a hearing. No appeal was taken from that ruling. We granted *certiorari* with respect to the June 27 appeal from the judgment, prior to any proceedings in the Court of Special Appeals, to consider whether the two conditions constitute an "illegal sentence" that may be corrected notwithstanding appellant's failure to object to them in a timely manner in the Circuit Court.

### *Waiver*

The State's principal response to appellant's complaints is that, because appellant made no complaint about the two conditions when they were imposed and, by signing the order of probation, consented to them, he waived his right to complain about the conditions on appeal. *See* Maryland Rule 8– 131(a). Appellant regards the two conditions as "illegal," however, and, quoting from *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949, 951 (1985), he urges that "when the trial court has allegedly imposed a sentence not permitted by law, the issue should ordinarily be reviewed on direct appeal even

---

**2.** The motion stated that it was filed "pursuant to Maryland Rule 4– 345(b) to modify or reduce the sentence passed in the above referenced matters. . . ." At one time, section (b) of the Rule dealt with a motion for modification filed within 90 days after sentence. In 2004, that provision was moved to section (e), however. Rule 4–345(b) now provides for the court's revisory power over a sentence in case of fraud, mistake, or irregularity, none of which were alleged in the motion. Nor did the motion allege that the restitution order was "illegal" for purposes of Rule 4–345(a). Given the caption and substantive allegations of the motion, we shall assume that it was, in fact, filed pursuant to section (e).

if no objection was made in the trial court." *See also Goff v. State,* 387 Md. 327, 875 A.2d 132 (2005).

 A criminal sentence may be deficient and subject to being vacated on appeal for a variety of reasons. Through its adoption of what is now Maryland Rule 4–345 and through its decisional jurisprudence, this Court has created two categories of deficiency and has treated those categories differently. Maryland Rule 4–345(a) permits a court to "correct an illegal sentence at any time." If a sentence is "illegal" within the meaning of that section of the rule, the defendant may file a motion in the trial court to "correct" it, notwithstanding that (1) no objection was made when the sentence was imposed, (2) the defendant purported to consent to it, or (3) the sentence was not challenged in a timely-filed direct appeal. That is the thrust of *Walczak, Goff,* and a dozen other cases. The sentence may be attacked on direct appeal, but it also may be challenged collaterally and belatedly, and, if the trial court denies relief in response to such a challenge, the defendant may appeal from that denial and obtain relief in an appellate court.

The *scope* of this privilege, allowing collateral and belated attacks on the sentence and excluding waiver as a bar to relief, is narrow, however. We have consistently defined this category of "illegal sentence" as limited to those situations in which the illegality inheres in the sentence itself; *i.e.,* there either has been no conviction warranting any sentence for the particular offense or the sentence is not a permitted one for the conviction upon which it was imposed and, for either reason, is intrinsically and substantively unlawful. *See Evans v. State,* 389 Md. 456, 463, 886 A.2d 562, 565 (2005); *Baker v. State,* 389 Md. 127, 133, 883 A.2d 916, 919 (2005); *Randall Book Corp. v. State,* 316 Md. 315, 321–23, 558 A.2d 715, 718–19 (1989). As we made clear in *Randall Book Corp.,* any other deficiency in the sentence that may be grounds for an appellate court to vacate it—impermissible considerations in imposing it, for example—must ordinarily be raised in or decided by the trial court and presented for appellate review in a timely-filed

direct appeal. The sentence may not be attacked belatedly and collaterally through a motion under Rule 4–345(a), and, subject to the appellate court's discretion under Maryland Rule 8–131(a), the defendant is not excused from having to raise a timely objection in the trial court.[3]

There is nothing intrinsically illegal about either condition here. Restitution in the amount of $5,000 is permitted as a condition of probation upon a conviction for second degree assault, as is maintaining full-time employment or student status, and appellant does not seem to contend otherwise. His complaint is that those conditions were inappropriate in this case, in large part because no evidentiary foundation was laid to support them, but, even if so, that does not make the conditions intrinsically illegal. At best, it would require that this Court, in a timely-filed direct appeal, vacate them, if (1) the complaint about them was preserved for appellate review, or (2) we choose to exercise the discretion we have under Maryland Rule 8–131(a) to consider an issue not raised in or decided by the trial court.

Not only did appellant make no objection when the trial court announced the two conditions as part of the probation, but, as noted, when presented with the written order of probation and the judgment of restitution, he signed them and thereby facially consented to their terms. It is true that appellant later raised an objection to both conditions in a timely-filed motion to modify the sentence, but he failed to appeal from the denial of that motion. Whether an appeal would properly lie from such a ruling is therefore not before

---

**3.** An unlawful sentence may be challenged in a proceeding under the Maryland Uniform Post Conviction Procedure Act, CP §§ 7–101 through 7–204, but relief in such an action may be denied if the petitioner intelligently and knowingly failed to present the challenge at trial or on direct appeal. *See* CP § 7–106(b). Such a sentence may also be challenged through *habeas corpus* or *coram nobis* proceedings, but, with exceptions not relevant here, no appeal lies from the denial of relief in those proceedings. *See* CP § 7–107(b). The full right to seek appellate relief where the nature of the alleged illegality does not fall within the first category of "illegal sentence" lies only where the challenge is made in the trial court and on direct appeal.

us.[4] What we have before us in this appeal, therefore, is a complaint never presented to the trial court about a sentence, or part of a sentence, that is not "illegal" within the meaning of Maryland Rule 4–345(a). Ordinarily, and routinely, we would hold the complaint waived and refuse to address it.

This Court does have discretion under Maryland Rule 8–131(a) to address an issue that was not raised in or decided by the trial court, however. It is a discretion that appellate courts should rarely exercise, as considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial court's ruling, action, or conduct be presented in the first instance to the trial court so that (1) a proper record can be made with respect to the challenge, and (2) the other parties and the trial judge are given an opportunity to consider and respond to the challenge.

In this case, we shall exercise our discretion to consider appellant's challenge to the restitution order, but not to the employment condition. We shall consider the restitution issue because (1) it constitutes plain error, and (2) it transcends this case; it is one that may affect hundreds of cases that flow through our criminal and juvenile courts and that implicates important Constitutional and statutory rights, and guidance is needed.[5] The deficiency in the employment condition alleged here by appellant can be addressed if, upon his release from

---

4. *Compare Wilson v. State,* 227 Md. 99, 175 A.2d 775 (1961), *Biles v. State,* 230 Md. 537, 187 A.2d 850 (1963), *Gleaton v. State,* 235 Md. 271, 201 A.2d 353 (1964), and *Costello v. State,* 237 Md. 464, 206 A.2d 812 (1965) with *State v. Kanaras,* 357 Md. 170, 742 A.2d 508 (1999), *Herrera v. State,* 357 Md. 186, 742 A.2d 517 (1999), *Greco v. State,* 347 Md. 423, 701 A.2d 419 (1997), and *Fuller v. State, supra,* 397 Md. 372, 918 A.2d 453, 2007 WL 765204 (2007).

5. We also note that an objection was, in fact, made to the restitution order in the motion to modify the sentence, but, because no appeal was taken from the denial of that motion, we cannot address the issue in that context. By regarding the order as plain error and addressing it pursuant to Rule 8–131(a), we avoid the prospect of a belated appeal under the Post Conviction Procedure Act, which serves no one's interest.

prison, he is charged with a violation of that condition. Present guidance is not needed with respect to that condition.

## Restitution

Title 11 of the Criminal Procedure Article (CP) sets forth the various statutory rights accorded to victims of crime, among which are the right to be notified of all court proceedings that affect the interests of the victim (CP § 11–104), the right to attend any such proceeding at which the defendant has a right to appear (CP § 11–102), and the right to request restitution (CP § 11–603). In order to implement those rights, law enforcement officers, judicial officials, and prosecutors are required to deliver to victims or their representatives notification request forms and pamphlets describing the rights possessed by victims and services available to them. *See* CP, §§ 11–104 and 11–914(9) and (10).

Restitution is provided for in CP § 11–603. As relevant here, § 11–603(a) allows a court to enter a judgment of restitution if "as a direct result of the crime," the victim (2) suffered: "(i) actual medical, dental, hospital, counseling, funeral, or burial expenses or losses; (ii) direct out-of-pocket loss; (iii) loss of earnings; or (iv) expenses incurred with rehabilitation" or (3) incurred medical expenses that were paid by a governmental unit. Section 11–603(b) provides that a victim "is presumed to have a right to restitution under subsection (a) of this section if: (1) the victim or the State requests restitution; and (2) the court is presented with competent evidence of any item listed in subsection (a) of this section."

There appears to be some facial ambiguity in these two subsections. Subsection (a) purports to permit the court to order restitution for the enumerated expenses, even in the absence of (1) a request for restitution by the State or the victim, and (2) any evidence to support an award. The specific requirement of a request and supporting evidence is found in subsection (b) in the context of a presumption of entitlement. Arguably, the statute might be read as allowing a court, under subsection (a), to order restitution without any request for it

and without any evidence to support it so long as it is not applying the presumption stated in subsection (b). In that regard, the statute is, at best, inartfully drawn. We are unwilling to read subsection (a) in such an unrestrained manner, because to do so would not only raise serious due process issues but also contravene the rule of lenity that is ordinarily applied when a penal statute is ambiguous.

■ An order of restitution entered in a criminal case, even when attached as a condition of probation, is a criminal sanction—part of the punishment for the crime. *Goff v. State,* 387 Md. 327, 338–40, 875 A.2d 132, 139–40 (2005); *Williams v. State,* 385 Md. 50, 58–59, 867 A.2d 305, 310 (2005); *Grey v. Allstate Insurance Company,* 363 Md. 445, 451, 769 A.2d 891, 895 (2001). Although, as we pointed out in *Grey,* it has a therapeutic and rehabilitative function with respect to the defendant, its predominant and traditional purpose is to reimburse the victim for certain kinds of expenses that he or she incurred as a direct result of the defendant's criminal activity. It is not a judicially imposed gift to the victim, but reimbursement that the defendant, personally, must pay.

■ Because restitution is part of a criminal sentence, as a matter of both Constitutional due process and Maryland criminal procedure, such an order may not be entered unless (1) the defendant is given reasonable notice that restitution is being sought and the amount that is being requested, (2) the defendant is given a fair opportunity to defend against the request, and (3) there is sufficient admissible evidence to support the request—evidence of the amount of a loss or expense incurred for which restitution is allowed and evidence that such loss or expense was a direct result of the defendant's criminal behavior. *See People v. Valdez,* 928 P.2d 1387, 1392–93 (Colo.App. 1996); *Gilmore v. State,* 668 So.2d 1092 (Fla.App.1996); *Gilileo v. State,* 923 So.2d 612, 614 (Fla.App.2006); *Hampton v. State,* 141 P.3d 101, 105 (Wyo.2006).[6]

6. Defendants have a right under Maryland Rule 4–342(f) to allocute, which includes the right "to present information in mitigation of

This is not an onerous burden; indeed, it should be a relatively simple one. Victims are required to be notified, and presumably *are* notified, of their rights under the law, including, in an appropriate case, the right to request restitution. They are advised that they may request restitution directly or may ask the prosecutor to request it on their behalf. They are reminded to keep bills and statements for expenses they incur so that they can be presented to the court. If a victim requests restitution, CP § 11–603(b) creates a presumption that he or she is entitled to it, *provided* that "the court is presented with competent evidence" of the items for which restitution is sought. CP § 11–615 relaxes both the evidentiary burden and the hearsay rule with respect to restitution requests by making written statements or bills for medical, dental, hospital, counseling, funeral, and burial expenses admissible and legally sufficient evidence of the amount, fairness, and reasonableness of the charges and the necessity of the services or material provided. That section also places on a defendant who challenges the fairness or reasonableness of the charges or the necessity of the service the burden of proving that the amount is not fair or reasonable.

■ The record contains a certification by the State's Attorney for Baltimore City that the victim notification form and pamphlet required by what is now CP § 11–104 were sent to "the victim." Mr. Shiflett signed and returned the notification form, which contained a request for "notice of all events related to this case and to the defendant/juvenile, as allowed by law," and a demand for "all the rights to which victims of crime are entitled."[7] He was therefore aware of his right to seek restitution or to have the prosecutor seek it for him.

---

punishment." As a practical matter, we do not see how it would be possible for a defendant to exercise that right, with respect to restitution, if, at the time of allocution, the defendant is unaware that restitution is being sought or of the amount that is being sought.

**7.** The notification form contained in the record appears to be a five-copy form, one copy each for the court clerk, the State's Attorney, the detention center or State Division of Correction, and the Division of

Mr. Shiflett was present in court at sentencing, and, indeed, he informed the court of the injuries he had suffered and their continuing impact—a deep wound to the top of his head that required stitches, a concussion, daily severe headaches, and blurred vision in one eye. Although medical and hospital records pertaining to his treatment after the attack were in evidence, none of them indicated what, if anything, either he or any governmental agency paid for that treatment. Other than the general "demand" for "all the rights to which victims of crime are entitled" in the request for notification form, neither Mr. Shiflett nor the prosecutor made any written or oral request for restitution, and neither of them presented any evidence of any expense or out-of-pocket loss incurred by Shiflett or by any governmental agency on his behalf. There was no discussion at all regarding restitution until the court, in

---

Parole and Probation. The fifth copy is for the victim, and it appears that the instructions are on the back of that copy. As only the first copy, for the clerk, is in the record and would likely be placed in the court file, the record does not and, under current practice, ordinarily would not reveal the instructions and information actually given to the victim. Although it would be helpful if the instructions and information were, in some way, placed in the record so that, if any dispute or uncertainty should arise, the court will have direct evidence of the advice given to the victim, the gap, at least in this instance, may be filled by judicial notice. CP § 11–104(c) requires the prosecutor to send the notification request form described in CP § 11–914(10) and the pamphlet described in § 11–914(9). Sections 11–914(9) and (10) require that those forms be developed by the State Board of Victim Services, a unit in the Governor's Office of Crime Control and Prevention. Because the forms mandated by law to be sent are in the nature of official documents prepared by a State agency and are readily available to the public and to the Court, we may fairly take judicial notice of them. The information included on the reverse side of the notification request form sent to the victim contains a statement that the victim has "the legal right" to "request restitution." The pamphlet is even more explicit. It states that the victim has the right to request "payment of certain crime-related costs" from the defendant if the defendant is found or pleads guilty, and advises that the victim can "receive money to help pay for crime-related costs" by asking the State's Attorney to seek restitution from the court, saving receipts or copies of bills, and including a request for restitution in a victim impact statement. We may therefore properly conclude that Mr. Shiflett had been informed that he had a right to seek restitution in conformance with CP § 11–603.

announcing sentence, stated that it would be a condition of appellant's probation. It thus seems apparent, at least from the record, that the order that appellant pay $5,000 in restitution as a condition of his probation was pulled entirely out of thin air. It had no evidentiary basis and appellant was never given the opportunity, prior to its entry, to contest or defend against it. It is for that reason that the order was entered erroneously and must be vacated.

ORDER OF THE CIRCUIT COURT FOR BALTIMORE CITY THAT APPELLANT PAY RESTITUTION IN THE AMOUNT OF $5,000 AS A CONDITION OF PROBATION VACATED; JUDGMENT OTHERWISE AFFIRMED; COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.