*Philip Paul Ingram, Jr., v. State of Maryland*, No. 4, September Term 2018. Opinion by Harrell, J.

**CRIMINAL LAW – THEFT – RESTITUITION**

Section 7-104(g)(1)(i)(2) of the Md. Code's Criminal Law Article, which requires restitution in a theft case, provides a court authority to order such, independent of the presence or absence of a request for same from the State or victim. This section creates a "theft exception" to the restitution provision found in the Md. Code's Criminal Procedure Article, § 11-603(b)(1), requiring a request from the State or the victim generally.

**CRIMINAL PROCEDURE – THEFT – RESTITUTION**

The general restitution provisions found in the Criminal Procedure Article, § 11-603(b)(1), govern ordinarily court-ordered restitution. This provision grants discretion to order restitution generally, provided the State or victim requests it. An exception to this provision exists for defendants convicted of theft under Criminal Law Article § 7-104, which requires restitution in theft cases, regardless of whether the State or victim requests it.

IN THE COURT OF APPEALS
OF MARYLAND

No. 4

SEPTEMBER TERM, 2018

---

PHILIP PAUL INGRAM JR.

v.

STATE OF MARYLAND

---

Barbera, C.J.,
Greene
*Adkins
McDonald
Hotten
Getty
Harrell, Glenn T., Jr.,
     (Senior Judge, Specially Assigned)

JJ.

---

Opinion by Harrell, J.

---

Filed: November 19, 2018

*Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled Pursuant to the MD. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document ° authentic.



Suzanne C. Johnson, Acting Clerk

Ask, and it will be given to you. . . .
*Matthew* 7:7 (King James).
and
MD. CODE, CRIM. PROC. § 11-603(b)(1).

vs.

Even if you don't ask, "sometimes you get what you need."
THE ROLLING STONES, *You Can't Always Get What You Want*, LET IT BLEED album
(Decca Records 1969).
and
MD. CODE, CRIM. LAW § 7-104(g)(1)(i)(2).

We are called upon here to construe (based on purely secular legal principles) assertedly opposing statutory provisions of the Maryland Code regarding court-ordered restitution in theft cases. Petitioner, Philip Ingram Jr. ("Ingram"), urges us to find that orders of restitution in all criminal cases, including a prosecution for theft under Criminal Law Article, § 7-104 ("§ 7-104"), are governed exclusively by the procedural requirements of Title 11 of the Criminal Procedure Article ("Title 11"). Ingram seeks to overturn a restitution order, stemming from his theft conviction, requiring him to pay his victim the value of the goods he stole, i.e., $18,964.55. Ingram points out specifically that Title 11 contains a provision (§ 11-603(b)(1)) that obliges the victim or State to request restitution in order to trigger a presumed right to receive restitution, a prerequisite not satisfied in his case. The State retorts that, in theft cases, § 7-104(g)(1)(i)(2) of the Criminal Law Article provides independent authority (indeed, a mandate) for a court to order restitution as part of a sentence for a theft conviction, regardless of a request for that relief. For reasons to be explained, we hold that the restitution requirement in § 7-104(g)(1)(i)(2) authorizes a

court in a theft case to award restitution, regardless of whether the State or the victim requests that relief. Thus, we affirm the judgment of the Court of Special Appeals.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Ingram was employed by BJ's Wholesale Club ("BJ's") from 1 October 2015 until 17 November 2015 in its Baltimore County store. On multiple instances during his relatively brief tenure at BJ's, Ingram was observed (on store surveillance video) stealing new automobile tires. When confronted ultimately by BJ's Loss Prevention Department, Ingram admitted to the theft. His employment was terminated. He was also arrested by local law enforcement. In all, Ingram stole approximately 120 tires, having a total value of $18,964.55, as attested by a BJ's representative, Derek Schreck ("Schreck"), its Regional Asset Protection Manager.

Ingram was charged initially in the District Court of Maryland, sitting in Baltimore County, with two counts, theft and theft scheme of property having a value of at least $10,000, but less than $100,000. He declined to provide information to either the police or BJ's regarding the party or parties to whom he transferred the tires.

In the Circuit Court for Baltimore County, Ingram entered a guilty plea to an amended count of theft of property valued of at least $1,000, but less than $10,000. The State agreed to nol pros the theft scheme count. It agreed additionally to "submit on the Defendant's record and victim impact" statement, in exchange for the guilty plea.

2

In an on-the-record exchange, defense counsel demonstrated Ingram's understanding of the charge to which he was pleading guilty. Counsel informed Ingram that the charge "carries a maximum penalty of up to 10 years" and that the judge was free to "impose up to 10 years of incarceration." Neither defense counsel, the State, nor the court advised Ingram at that time that his sentence could (or could not) contain also an order to pay restitution. The court accepted Ingram's plea and found him guilty.

During sentencing, defense counsel noted that Ingram suffered from drug addiction. In view of this, his counsel requested the court to impose a partially-suspended sentence and allow Ingram to participate in a drug treatment program during his incarceration. The State abstained from making a specific sentencing recommendation. Rather, the State submitted Ingram's criminal record, which included misdemeanor theft convictions from 2012 and 2015.

Schreck testified during sentencing as the victim's representative. He stated that BJ's missed by $21,331 its budgeted profit plan, for that part of the store's department that included tire sales, and attributed the shortfall to Ingram's theft. Schreck expressed sympathy for Ingram, stating that "I just hope that he learns a lesson and, you know, gets himself treatment." Schreck did not request restitution for the $18,964.55 described earlier as the value of the tires or the asserted "lost profit" number.

The court sentenced Ingram to 10 years of incarceration, with all but 18 months suspended in favor of three years of probation. The judge ordered also Ingram to pay to BJ's $18,964.55 in restitution. Defense counsel remonstrated that there had been no request for restitution. The court explained:

3

I know this is a large company, but when things like this happen companies go out of business, then all of those other people who work there who need those jobs to pay for their mortgage, to pay for their rent, to pay for the food for their kids don't have those jobs. So it's not a victimless crime because it's a company. I expect restitution in the amount of $18,964.55.

Ingram moved for modification of his sentence, renewing his objection to the order of restitution on the ground that neither the State nor the victim requested restitution. The court denied this motion.

Ingram filed an application for leave to appeal from his guilty plea. He argued that the circuit court erred in ordering restitution because neither the State nor the victim requested such relief. He maintained additionally that the guilty plea was not entered knowingly and voluntarily because he relied assertedly on the prosecutors' alleged oral representation during plea negotiations that restitution would not be sought. The Court of Special Appeals granted Ingram's application for leave to appeal.

On appeal, Ingram argued that the circuit court was not permitted to order him to pay restitution without a request from the victim or the State, as provided under Title 11, § 11-603(b)(1) of the Criminal Procedure Article of the Maryland Code. The State countered that restitution was proper because restitution was not ordered under Title 11 of the Criminal Procedure Article, but rather under § 7-104(g)(1)(i)(2) of the Criminal Law Article, which mandates restitution in theft cases. In affirming the order of restitution, the Court of Special Appeals concluded, in a per curiam opinion, that the sentencing judge was obliged to order restitution pursuant to § 7-104(g)(1)(i)(2) of the Maryland Criminal Law Article.

4

We granted Ingram's petition for writ of certiorari. Ingram advanced for our consideration a bifurcated inquiry,[1] which we reconstruct as three catechisms for analysis:

1. Does § 7-104(g)(1)(i)(2) of the Criminal Law Article provide authority, independent of § 11-603 of the Criminal Procedure Article, for a court to order restitution in a theft case?
2. Is a court's authority to order restitution governed pre-eminently by the restitution provision in the Criminal Procedure Article?
3. Where a defendant is convicted of theft, may a court order the defendant to pay restitution when neither the victim nor the State request it?

With regard to the first two questions, we hold that Criminal Law Article § 7-104(g)(1)(i)(2) provides independent authority for a court to order restitution in a theft case as a specific "theft exception" to the general restitution provision, § 11-603(b)(1), found in the Criminal Procedure Article. A court's authority to order restitution is governed ordinarily by the general restitution provisions in Title 11 of the Criminal Procedure Article, subject however to the theft exception noted above. As to question three, because § 7-104(g)(1)(i)(2) provides independent authority for a court to order restitution in a theft case, a court may order a defendant convicted of theft to pay restitution as authorized by the penalty provision of that section, regardless of whether the State or the victim requested specifically that relief.

---

[1] Ingram framed the questions as follows:
1. Does § 7-104 of the Criminal Law Article provide independent authority for a court to order restitution in a theft case, or, alternatively, is a court's authority to order restitution governed by the restitution provisions in Title 11 of the Criminal Procedure Article?
2. Where a defendant is convicted of theft, may a court order the defendant to pay restitution when neither the victim nor the State has requested it?

5

## II. STANDARD OF REVIEW

We review a trial court's restitution order ordinarily for abuse of discretion. *Silver v. State*, 420 Md. 415, 427, 23 A.3d 867, 874 (2011). When determining the propriety of a restitution order requires the Court to engage in statutory interpretation, however, the review is conducted without deference to the trial court's action. *Harrison-Solomon v. State*, 442 Md. 254, 265, 112 A.3d 408, 415 (2015).

## III. RELEVANT STATUTORY PROVISIONS

As noted earlier, Ingram plead guilty to theft of property having a value of at least $1,000, but less than $10,000, in violation of Criminal Law Article § 7-104. That section reads, in relevant part:

> (a) Unauthorized control over property. -- A person may not willfully or knowingly obtain or exert unauthorized control over property, if the person:
> (1) intends to deprive the owner of the property;
> (2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or
> (3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.
> …
>
> (g) Penalty. --
> (1) A person convicted of theft of property or services with a value of:
> (i) at least $ 1,[000] but less than $ [10,000][2] is guilty of a felony and:
> 1. is subject to imprisonment not exceeding 5 years or a fine not exceeding $ 10,000 or both; and

---

[2] Section 2, ch. 515, Acts 2016, effective October 1, 2017, substituted "$1,500" for "$1,000" and "$25,000" for "$10,000." MD. CODE, CRIM. LAW § 7-104. This substitution was not in effect when Ingram pleaded guilty, so we refer to the version of § 7-104 under which he was charged. The remaining relevant portions of § 7-104 were unaffected by the 2016 change.

6

2. *shall restore the property taken to the owner or pay the owner the value of the property or services. . . .*

MD. CODE, CRIM. LAW § 7-104 (emphasis added).

Ingram argues that § 7-104(g)(1)(i)(2) cannot be read harmoniously with the general restitution provision in Title 11, § 11-603(b)(1). Section 11-603 of that Title states, in relevant part:

(a) Conditions for judgment of restitution. -- A court may enter a judgment of restitution . . . in addition to any other penalty for the commission of a crime or delinquent act, if:
(1) as a direct result of the crime or delinquent act, property of the victim was stolen, damaged, destroyed, converted, or unlawfully obtained, or its value substantially decreased;
(2) as a direct result of the crime or delinquent act, the victim suffered:
…
(ii) direct out-of-pocket loss

(b) Right of victims to restitution. -- A victim is presumed to have a right to restitution under subsection (a) of this section if:
(1) *the victim or the State requests restitution*; and
(2) the court is presented with competent evidence of any item listed in subsection (a) of this section.

MD. CODE, CRIM. PROC. § 11-603 (emphasis added). In addition, § 11-619 of the Crim. Proc. Article states:

(a) Operation of subtitle in general. -- Subject to subsection (b) of this section, any order of restitution made by a court shall be governed by the provisions of this subtitle.
(b) Subtitle not construed to limit authority of court. -- This subtitle may not be construed to limit the authority of a court to direct a defendant . . . to make restitution or to perform certain services, as specified by the court, for the victim as an alternative means of restitution.

MD. CODE, CRIM. PROC. § 11-619 (2018).

7

## III. STATUTORY INTERPRETATION

Our inquiry in the matter of this statutory interpretation begins with recalling that:

The cardinal rule of statutory construction is to ascertain and effectuate the General Assembly's intent. "[O]ur primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." The starting point of any statutory analysis is the plain language of the statute, viewed in the "context of the statutory scheme to which it belongs." We presume, moreover, that the General Assembly "intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope." We do that "by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory."

It is also settled that when a statute's language is "clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends." Yet, it is equally "well settled that the purpose of the plain meaning rule is to ascertain and carry out the real legislative intent." We have emphasized that "[w]hat we are engaged in is the divination of legislative purpose or goal. . . . the plain-meaning rule is not a complete, all-sufficient rule for ascertaining a legislative intention. The meaning of the plainest language is controlled by the context in which it appears." To that end, "we may find useful the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments."

*Kranz v. State*, 459 Md. 456, 474-75, 187 A.3d 66, 76-77 (2018) (internal citations omitted).

### A.  Plain Meaning.

The first encounter in the statutory interpretation gauntlet is the "plain meaning rule." If statutory language is clear and unambiguous, the examining court is not obliged to look ordinarily beyond the statutes in question. *Opert v. Criminal Injuries Comp. Bd.*,

8

403 Md. 587, 593, 943 A.2d 1229, 1232 (2008).  The meaning of the plainest language is controlled, however, by the context in which it appears.  *Kaczorowski v. Baltimore*, 309 Md. 505, 514, 525 A.2d 628, 632 (1987).

The language of § 11-603(b)(1), read in isolation, is not ambiguous, nor is the language of § 7-104(g)(1)(i)(2) when considered similarly.  Title 11 supplies a general statutory scheme which governs seemingly any order of restitution in criminal and juvenile cases.  Section 7-104 contains, however, a specific restitution provision mandating seemingly restitution for any theft crime.  When read in conjunction, there seems to be, at first blush, conflict between the two statutory schemes.  Title 11, according to § 11-619, applies to "any order of restitution made by a court," but it "may not be construed to limit the authority of a court to direct a defendant . . . to make restitution."  To determine whether there can be a harmonious reading of § 11-603(b)(1) and § 7-104(g)(1)(i)(2), we embark on this quest to divine the intent of the Legislature in maintaining those provisions "on the books."

### B.  Divining Legislative Intent.

As noted earlier, our goal in statutory construction analysis is to discern and carry out the intent of the Legislature.  *Blue v. Prince George's Cty*., 434 Md. 681, 689, 76 A.3d 1129, 1133 (2013).  Legislation, for the most part, has an objective, goal, or purpose.  It seeks to remedy some evil, advance some interest, or attain some end.  *Kaczorowski v. Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 632 (1987).  Identifying the particular purpose, goal, or objective may be found in a variety of places: the language of the statute

or statutes in question; their bills' titles, preambles, or amendments; their bills' relationship to earlier and subsequent legislation; legislative history; and "other material that fairly bears on the fundamental issue of legislative purpose." *Id.* at 515, A.2d 632.

Ingram argues that the Legislature "clearly and unmistakably evinced an intent that all orders of restitution be governed by CP Title 11." The Legislature's intent, as diagnosed by Ingram, is clear because § 11-619(a) states: "[s]ubject to subsection (b) of this section, any order of restitution made by a court shall be governed by the provisions of this Subtitle." Section 11-619, in subsection (b), continues, however: "[t]his Subtitle may not be construed to limit the authority of a court to direct a defendant or a child found to have committed a delinquent act to make restitution or to perform certain services as specified by the court, for the victim as an alternative means of restitution."

Ingram directs next the spotlight on former Senator John Giannetti, one of the co-sponsors of Senate Bill 428 in the 2003 Regular Session of the Legislature, when he stated then that provisions were being added to Title 11, Subtitle 6, to clarify generally that restitution falls under that title. Senator Giannetti continued that his bill was intended to clarify that Subtitle 11 may not limit the authority of a court to direct a defendant or child to make restitution by performing certain services.[3] Ingram concludes from this that, because the Legislature included alternative means of restitution in the bill, it could have recognized explicitly an exception for theft cases if it intended there to be such an exception.

---

[3] To illustrate this point, Senator Giannetti used the example of requiring a vandal who cannot afford to pay monetary restitution to mow the lawn of the victim.

Ingram turns a jaundiced eye on the "legislative history" of § 7-104, which he regards as murky, at best. The restitution provision in that section is traceable to 1809. Accordingly, there is scant evidence of what the Legislature intended when it enacted that law originally because no records regarding the enactment exist from that time. The only reasonable inference, according to Ingram, is that the Legislature intended thereby merely to authorize restitution, in the discretion of a court, when a defendant commits theft, rather than to compel it.

Ingram relies also on *Chaney v. State*, 397 Md. 460, 918 A.2d 506 (2007). *Chaney* involved an altercation culminating in conviction of the defendant for second-degree assault, with restitution as a condition attached to the probation portion of his sentence. *Id.* at 462-63, A.2d 507. Neither the victim (in his victim-impact statement) nor the State requested the restitution ordered by the trial court. We found, pursuant to the requirements in Title 11, that the restitution order lacked an evidentiary basis, the defendant was given no opportunity to contest or defend against the restitution order, and, thus, it was ordered erroneously. *Id.* at 473, A.2d 513. We vacated the order. *Id.*, A.2d 514.

*Chaney* is distinguishable materially from the present case. The main reason is that *Chaney* did not involve a theft conviction, where the defendant was required to restore the stolen goods or their value. Rather, *Chaney* involved medical expenses, in an unproven amount. We found no basis for the amount of the restitution order and noted that it was pulled "entirely out of thin air." *Id.* In the present case, a specific substantive criminal law statute, to which Ingram plead guilty, § 7-104, requires restitution in theft cases. To state the obvious, assault and theft are different crimes. Chaney, after being convicted of assault

11

(not theft), was ordered to pay restitution, which we rejected for stated reasons that are not germane to the scope of our analysis in the present case.

It is obvious that the Legislature intended Title 11 of the Crim. Proc. Article to apply as broadly as possible to restitution orders. It seems also that the Legislature did not intend § 11-603(b)(1) to apply to restitution orders in sentencing for convictions of theft. Although § 11-619 of Title 11 states that Title 11 applies to all orders of restitution, it contains a subsection which states that Title 11 shall not be construed to limit the authority otherwise of a court to order restitution.   Although we acknowledge Ingram's argument that some legislative history suggests that § 11-619(b) was included to provide alternative means of restitution in circumstances where a defendant cannot pay, the language of the statute does not support unequivocally that conclusion.  The plain language of § 11-619(b) states that it shall not limit the authority of the court "to direct a defendant or a child found to have committed a delinquent act to make restitution or to perform certain services as specified by the court, for the victim as an alternative means of restitution."  It is unclear whether the end clause, "for the victim as an alternative means of restitution[,]" modifies the entire sentence, or merely the "or to perform certain services as specified by the court" portion of the sentence.  At best, this section of Title 11 strikes us as drawn inartfully.  We must turn in aid of our mission to other principles of statutory interpretation in our judicial tool box.

## C. Specific Versus General Statutory Language.

One such principle is the degree of specificity of the statutory sections under consideration. "When two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute." *State v. Roshchin*, 446 Md. 128, 142, 130 A.3d 453, 461 (2016). Additionally, "[w]hen two statutes cover similar subject matter, even if neither makes reference to the other, [the Court] must construe the statutes to give as full effect to each other as possible." *Oglesby v. State*, 441 Md. 673, 687, 109 A.3d 1147, 1155 (2015).

This principle of statutory construction assists us in untangling the seeming confrontation between § 11-603(b)(1) and § 7-104(g)(1)(i)(2). Title 11 is a general procedural statute governing restitution that grants a court discretion to order restitution for statutory and common law crimes in criminal and juvenile cases. Section 7-104, however, is a substantive criminal law statute that directs restitution, but *only* with regard to theft crimes. Although theft falls within the ambit of statutory crimes covered by Title 11, the matter of restitution in such cases is addressed more specifically in § 7-104. Therefore, § 7-104(g)(1)(i)(2) is "an exception to the general statute" and creates therefor a "theft exception" to the restitution general provision in § 11-603(b)(1) with regard to whether the State or the victim are obliged to ask for restitution as a threshold trigger for the exercise of the court's power to order restitution.

Because § 11-603(b)(1) and § 7-104(g)(1)(i)(2) both address restitution in a criminal law context, we must strive to construe harmoniously the statutes to give as full effect to each as possible. Holding that all restitution orders are governed by Title 11, without

exception (as Ingram would have us do), would render a portion of § 7-104 nugatory, specifically § 7-104(g)(1)(i)(2), a part of the penalty section of the theft statute, which requires a person convicted of theft to be subject to imprisonment and/or a fine *and* requires the thief to restore the stolen property or pay the owner the value of the property. To construe § 7-104(g)(1)(i)(2) as authorizing merely a court to exercise discretion to order restitution in a theft case, as Ingram argues, strains its language too greatly. Additionally, the effect of § 11-619(b) of the Criminal Procedure Article would be circumscribed were we to hold that all restitution orders are governed by Title 11, § 7-104(g)(1)(i)(2) notwithstanding. Section 11-619(b) of Title 11 states expressly that the provisions of Title 11 do not limit otherwise the authority of a court to direct a defendant to make restitution.[4]

Treating Crim. Law § 7-104(g)(1)(i)(2) as a theft exception to Crim. Proc. § 11-603(b)(i) allows both statutes to give as full effect to each other as possible. Title 11 remains the general restitution statute and applies to orders of restitution, except as held in the present case or as may be held similarly in a future case regarding other explicit contradictory statutory provisions. The exception carved-out by § 7-104(g)(1)(i)(2) applies only to a particular crime: theft. Holding that § 7-104(g)(1)(i)(2) gives the court authority otherwise to order restitution in theft crimes allows both § 7-104 and Title 11 to give as full effect to each other as possible. It preserves the obligatory restitution scheme for theft offenses while recognizing the otherwise general applicability of the other limitations and requirements to restitution found in Title 11.

---

[4] *See supra* Part III B.

14

## D. Relative Time of Enactment.

Another principle of statutory construction marshalled by Ingram relates to the relative recency of adoption of competing statutes. If two statutes present an irreconcilable conflict, "the statute whose relevant substantive provisions were enacted most recently may impliedly repeal any conflicting provision of the earlier statute." *Atkinson v. Anne Arundel Cty.*, 428 Md. 723, 743, 53 A.3d 1184, 1196 (2012).

Ingram points out that Title 11 was enacted more recently than Crim. Law § 7-104 and therefore reflects more accurately and across-the-board the contemporary expression of legislative intent on the subject of restitution. He argues that full effect cannot be given to § 7-104(g)(1)(i)(2) and § 11-603(b)(1), because they present an irreconcilable conflict. The statutes are irreconcilable, as this argument goes, because it cannot be the case that a court must order restitution in every theft case (regardless of whether the State or the victim seek it) where the Criminal Procedure Article, which makes restitution discretionary, requires a request from the victim or the State. The Legislature, when enacting originally in 1977 the provisions of Title 11, is presumed to have acted with knowledge of the pre-existing § 7-104. Thus, the restitution provisions in Title 11 should repeal impliedly the restitution provision contained in § 7-104.

The doctrine of recency does not advance Ingram's cause. Crim. Proc. §§ 11-603(b)(1) and 11-619 on the one hand and Crim. Law § 7-104(g)(1)(i)(2) on the other do not present an irreconcilable conflict. Title 11 is limited in application by § 11-619(b). As discussed above, § 7-104(g)(1)(i)(2) exists as an exception to § 11-603(b)(1). Because §

15

7-104(g)(1)(i)(2) is an exception to the restitution requirement in § 11-603(b)(1), the two statutes can operate harmoniously in their respective spheres.

## E. Constitutional Avoidance.

Constitutional avoidance is a further principle of statutory interpretation which Ingram invokes and attempts to bend to his service. Regarding this precept, we have stated:

> Whatever the intention of the Legislature with regard to CP § 3-122, it must comply with the Due Process Clause of the Fourteenth Amendment and its counterpart provision in Maryland, Article 24 of the Maryland Declaration of Rights. Under what the United States Supreme Court termed "the canon of constitutional avoidance," we will construe a statute to avoid conflict with the Constitution whenever it is reasonably possible to do so, even to the extent of applying a judicial gloss to interpretation that skirts a constitutional confrontation. We do not presume that the Legislature intended to enact unconstitutional legislation and, if it did so intend, we would limit a statute to only those situations in which it would pass constitutional muster.

*Harrison-Solomon v. State,* 442 Md. 254, 287, 112 A.3d 408, 428 (2015) (internal citations omitted).

As a matter of both constitutional due process and Maryland criminal procedure, restitution orders may be entered if:

> (1) the defendant is given reasonable notice that restitution is being sought and the amount that is being requested, (2) the defendant is given a fair opportunity to defend against the request, and (3) there is sufficient admissible evidence to support the request - evidence of the amount of a loss or expense incurred for which restitution is allowed and evidence that such loss or expense was a direct result of the defendant's criminal behavior.

*Chaney v. State*, 397 Md. 460, 470, 918 A.2d 506, 512 (2007).

Ingram argues that potential due process issues regarding restitution are more poignant when a guilty plea is involved. Md. Rule 4-242(c) ensures that a defendant, when entering a guilty plea, is acting knowingly and voluntarily with an understanding of the consequences.[5] He claims that the court-ordered restitution here raises serious due process issues because there was no notification that the punishment potential for his plea would include an order of restitution.

Ingram claims additionally that construing § 7-104 to authorize restitution without the constraint of the procedural requirement in § 11-603(b)(1), discussed in *Chaney*, renders § 7-104(g)(1)(i)(2) amenable to constitutional challenge. As this argument goes, requiring a request by the State or the victim for restitution serves as explicit notice to a defendant that restitution is in play. With such reasonable notice, a defendant will have a fair opportunity to defend against such a request. Without that reasonable notice, potential due process issues may arise, which render the statute vulnerable to constitutional attack.

The State counters Ingram's gloomy forecast by arguing that the three prerequisites for restitution outlined in *Chaney* are met as a consequence of a valid theft conviction, whether by plea or trial. The first requirement, that the defendant be given reasonable notice that restitution is in play and in what claimed amount, is fulfilled by the fact that restitution is required by the very statute, § 7-104, underlying the conviction.[6] Because an

---

[5] Ingram argued in the circuit court and Court of Special Appeals that he did not enter his guilty plea knowingly and voluntarily. This argument, however, was not advanced for our review so we will not consider it further.

[6] The State details also a brief history of the concept of restitution, spanning from the Code of Hammurabi to 1809 when the General Assembly enacted originally the precursor to § 7-104. Presumably, this narrative is intended to support the contention that restitution is

17

order of restitution is linked inextricably to the underlying theft charge (which requires proof of the value of the property stolen and restitution to be made), the State argues that the second *Chaney* requirement is satisfied. The opportunity to defend against an order of restitution is coupled inherently with the defendant's opportunity to defend against a theft charge or plead guilty to it. A plea to a charge under § 7-104 implies the defendant is aware of the terms of that statute. The third requirement outlined in *Chaney*, sufficient admissible evidence to support the amount of the request for restitution, is satisfied because proof of valuation regarding the underlying theft conviction stands-in for the burden otherwise of adducing sufficient admissible evidence for establishing the amount of restitution.

Ingram did not seek review of his restitution order on constitutional grounds. Rather, Ingram spun-up potential constitutional challenges to reading § 7-104 as requiring restitution in theft crimes and how that interacts with the restitution provisions of Title 11.

It seems to us that the specter of any constitutional concerns that might hover in this case are stifled by the "ghostbuster" fact that Ingram plead guilty to § 7-104, demonstrating constructive notice that he would be subject to make restitution. Defense counsel elicited, on the record of the plea, the specifics of the charge to which Ingram was pleading and the associated consequences.[7] The trial court determined that Ingram

---

neither a new nor novel concept. Thus, a defendant has reasonable notice that restitution accompanies a conviction of theft. Although we enjoy a good history lesson, we do not agree that a defendant convicted of theft is on notice of restitution simply because that concept has existed since at least the 18th century B.C.

[7] In addition to ensuring Ingram's understanding of the theft crime to which he was pleading guilty, defense counsel informed Ingram that he would not have the right to withdraw his plea after sentencing, that he had a right to a trial and associated rights, such as the State's burdens, and that his plea could violate earlier probation if he was on

understood fully the charge to which he was pleading guilty and associated consequences. Because Ingram was not forthcoming as to whom he gave the purloined tires, the only form restitution could take was reimbursement of a sum equal to the value of the tires. There was an opportunity for Ingram to contest the charge, including the value of the stolen tires attested to by BJ's representative. He chose to plead guilty. The evidentiary burden of sufficient admissible evidence to support the request was satisfied by Ingram's confession, subsequent guilty plea, and Schreck's statement regarding the valuation of the tires.[8]

## F. Rule of Lenity.

The rule of lenity is a principle of statutory construction that may aid a defendant in the event of an ambiguous penal statute. "An ambiguous penal statute is subject to 'the rule of lenity,' which requires that such statutes be strictly construed against the State and in favor of the Defendant. This means that it must be 'strictly construed so that only punishment contemplated by the language of the statute is meted out.'" *Gardner v. State*, 344 Md. 642, 651, 689 A.2d 610, 614 (1997) (internal citations omitted).

---

probation between October and December of 2015. Then, counsel asked a series of questions to make sure that the plea was voluntary and Ingram's individual decision. The trial judge found that Ingram freely, knowingly, and voluntarily agreed to enter a guilty plea. The judge found additionally that Ingram entered his plea with a "full understanding of the nature of the charge, *the possible consequences of the plea*, and all of the rights that he is waiving." (emphasis added).

[8] Ingram, in his brief, alleges that the State expressed in the course of the plea negotiations between counsel that it would not seek restitution. The record contains no corroboration or evidentiary support for this claim. We cannot consider this allegation. Regardless, the argument is irrelevant because a court has authority, under § 7-104(g)(1)(i)(2), to order restitution, notwithstanding the absence of a request from the State or a victim.

Ingram argues finally that, to the extent that § 7-104(g)(1)(i)(2) is ambiguous, when considered in light of § 11-603(b)(1), the rule of lenity should apply. We iterated previously that the language of § 7-104(g)(1)(i)(2) is not ambiguous. For the reasons stated, it can be read in conjunction with Title 11 harmoniously to give maximum possible effect to both.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**