*Tomekia Conaway v. State of Maryland*, No. 69, September Term 2018.

*Luke Daniel Johnson v. State of Maryland*, No. 76, September Term 2018.  Opinion by Harrell, J.


**HEADNOTE[S]**

**COURTS AND JUDICIAL PROCEEDINGS – TECHNICAL VIOLATIONS OF PROBATION – POST-CONVICTION APPEALABILITY**
Maryland Code, Courts and Judicial Proceedings, Title 12, Subtitle 3 provides the framework for a party to appeal a final judgment in a civil or criminal case entered by a circuit court.  Section 12-302(g) of that Subtitle requires a probationer to seek review of an order of a circuit court revoking probation by application for leave to appeal.  A probationer, in order to challenge a circuit court's order revoking probation for a technical violation and sentencing him/her to incarceration, must do so by filing an application for leave to appeal, rather than a direct appeal.

**CRIMINAL PROCEDURE – JUSTICE REINVESTMENT ACT – PRESUMPTIVE INCARCERATION LIMITS FOR TECHICAL VIOLATIONS OF PROBATION**
The Justice Reinvestment Act of 2016, codified in relevant part as § 6-223(d) of the Maryland Code, Criminal Procedure, places presumptive limits on the period of reincarceration for probationers who commit technical violations of their probation.  Those presumptive limits are 15 days for the first violation, 30 days for the second, and 45 days for the third.  A judge, however, has discretion to impose a period of lawful incarceration that exceeds the presumptive limits if the judge finds the probationer creates a risk to public safety, himself/herself, a victim, or a witness.

Tomekia Conaway v. State of Maryland
Circuit Court for Dorchester County
Case No. 09-K-07-012926
Argued: April 9, 2019

Luke Daniel Johnson v. State of Maryland
Circuit Court for Washington County
Case No. 21-K-80-006054
Argued: May 6, 2019

IN THE COURT OF APPEALS
OF MARYLAND

SEPTEMBER TERM, 2018

No. 69

TOMEKIA CONAWAY

v.

STATE OF MARYLAND

No. 76

LUKE DANIEL JOHNSON

v.

STATE OF MARYLAND

Barbera, C.J.,
*Greene
McDonald
Watts
Hotten
Getty
Harrell, Glenn T., Jr.,
      (Senior Judge, Specially Assigned)
            JJ.

Opinion by Harrell, J.

Filed: July 11, 2019

*Greene, J., now retired, participated in the hearing and conference of *Conaway* only while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion as applicable to the *Conaway* case.



Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

These two cases are decided in a consolidated opinion because of similarities in the flagship question posed in each case – whether the Justice Reinvestment Act of 2016 ("JRA"), as codified, grants probationers found to have committed a technical violation of probation the right to appeal directly to the Court of Special Appeals (versus proceeding by an application for leave to appeal) from a circuit court's order of violation of probation and resulting sentence that exceeds the presumptive limits of incarceration for a technical violation.[1]

Petitioner Tomekia Conaway ("Conaway") admitted, after a series of hearings and failing second (and third) chances given by the trial judge, to violating her probation by failing to complete successfully a drug treatment program. The judge, in the Circuit Court for Dorchester County, revoked ultimately her probation and sentenced her to 15-years of incarceration. In response, Conaway filed a "Notice of Appeal or Alternatively Application for Leave to Appeal." The Court of Special Appeals, on 11 June 2018, directed that the case proceed as an application for leave to appeal. Conaway proceeded accordingly. The intermediate appellate court issued a mandate denying her application as read and considered. Conaway petitioned this Court for a writ of certiorari, asserting a right of direct appeal to the intermediate appellate court. The Court granted that petition. *Conaway v. State*, 462 Md. 554, 201 A.3d 1227 (2019).

---

[1] Petitioner Johnson presents two additional issues not raised by Petitioner Conaway.

Petitioner Luke Daniel Johnson ("Johnson") sought post-conviction relief and moved to reopen a proceeding relating to a 1980 conviction for first-degree rape and third-degree sexual offense.[2] A judge, in the Circuit Court for Washington County, granted the motion. After a hearing, Johnson received credit for time served and was released, subject to five years of supervised probation, with conditions. Johnson committed subsequently two technical violations of the conditions of his probation. The judge determined Johnson committed a "public safety violation" and sentenced him to ten years of incarceration. Johnson noted an appeal and filed an Application for Leave to Appeal with the Court of Special Appeals. The State moved to dismiss the appeal, and the Court of Special Appeals granted the State's motion on 19 November 2018. This Court granted Johnson's petition for a writ of certiorari. *Johnson v. State*, 463 Md. 145, 204 A.3d 189 (2019). Johnson's application for leave to appeal remains pending.

## I.    FACTUAL BACKGROUND

### A.    Conaway

Conaway was charged in the Circuit Court for Dorchester County in 2008 with first-degree murder and related charges. She entered a negotiated guilty plea to second-degree murder and was sentenced to 30 years in prison, with all but 20 years suspended. The trial judge ordered also that Conaway serve five years of supervised probation upon her release from incarceration.

---

[2] The Court of Special Appeals, in Johnson's direct appeal in 1982, reversed the third-degree sexual offense conviction.

In 2013, Conaway filed a motion to modify her sentence. The circuit court modified the sentence to 30 years in prison, with all but 15 years suspended. The probation requirement remained the same.

In 2015, Conaway (while still incarcerated) filed a request for an evaluation, pursuant to Md. Code, Health-Gen. § 8-505.[3] The court granted the request. As a result, the circuit court suspended the balance of Conaway's executed sentence upon her

---

[3] That section reads, in pertinent part:

**In general**
(a)(1)(i) Except as provided in paragraph (2) of this subsection, before or during a criminal trial, before or after sentencing, or before or during a term of probation, the court may order the Department to evaluate a defendant to determine whether, by reason of drug or alcohol abuse, the defendant is in need of and may benefit from treatment if:
    1. It appears to the court that the defendant has an alcohol or drug abuse problem; or
    2. The defendant alleges an alcohol or drug dependency.
* * *
**Court ordered evaluation**
(d)(1) If a court orders an evaluation under this section, the evaluator shall:
    (i) Conduct an evaluation of the defendant; and
    (ii) Submit a complete report of the evaluation within 7 days to the:
        1. Court;
        2. Department; and
        3. Defendant or the defendant's attorney.
(2) On good cause shown, a court may extend the time for an evaluation under this section.
(3) Whenever an evaluator recommends treatment, the evaluator's report shall:
    (i) Name a specific program able to immediately provide the recommended treatment; and
    (ii) Give an actual or estimated date when the program can begin treatment of the defendant.

admission to a substance abuse program.    Conaway was released from prison in 2016 and began her probationary period.

Conaway's probation officer filed a  Violation of Probation Request for Warrant in July 2017.  The petition alleged that Conaway violated conditions of her probation.  A hearing was held in October 2017.  At the hearing, Conaway admitted to violating Rule 13 of the conditions of her probation.  Rule 13 required her "to submit to and successfully complete and pay required costs for alcohol and drug testing and treatment as directed" by her probation agent.  Conaway failed to show up for drug treatment on numerous occasions and was discharged ultimately from the Dorchester County Addictions Program.  Her probation agent recommended a 15-day sanction for a first-time technical violation, consistent with the codified portions of the JRA.[4]  At the conclusion of the hearing, the judge deferred sentencing until January 2018, to give Conaway another chance to resume a treatment program and see how she would fare during the intervening time.[5]

The deferred sentencing hearing was held in January 2018.  Conaway's probation agent stated that Conaway enrolled and began a new treatment program.  In short order, however, she was discharged from the program because she failed to attend on multiple occasions.  The court, during this hearing, deemed Conaway a threat to public safety "because of the underlying charges and the substance abuse issues[.]" As such, the judge

---

[4] *See infra* Section II.

[5] The judge stated the delay was to gain "a real clearer picture" of how Conaway would act between the revocation hearing and the rescheduled sentencing date.

revoked Conaway's probation, postponing sentencing until later that day so the court could calculate her time served.

When court reconvened, Conaway pled her case. She claimed that she was unaware that she had been discharged from the treatment program. Explaining her absences, Conaway said she had been caring for her mother, and that she had spoken to her counselor about making a weekly schedule. In her words, Conaway was "waiting . . . to be set up to go into these classes."

The judge, moved apparently by Conaway's remonstrations, decided to give her another opportunity to avoid incarceration. He placed Conaway back on probation and deferred further consideration for 60 days, until March 2018, to see if she could comply with the relevant condition of her probation.

The March 2018 sentencing hearing proved, however, to be "strike three." The probation agent informed the circuit court that Conaway began a new drug treatment plan and program in Dorchester County, in compliance with the condition of her probation. She moved thereafter to Talbot County and stopped attending the program. The court revoked her probation and sentenced her to 15 years in prison. In explaining his decision, the trial judge referred to his prior decisions regarding Conaway's probation status, but did not reiterate that applying the presumptive statutory penalty would create a risk of safety to anyone in particular or generically.

Conaway filed *pro se* a notice of appeal to the Court of Special Appeals from the circuit court's revocation of her probation. Four days later, defense counsel entered an appearance and filed a "Notice of Appeal or Alternatively Application for Leave to

Appeal." The latter paper asserted that the circuit court erred in two ways: 1) exceeding the 15-day maximum sentence allowed under the Justice Reinvestment Act for a first technical violation of probation; and, 2) doing so without finding that adhering to the presumptive 15-day limit would create a risk to public safety, a victim, or a witness.

The Court of Special Appeals issued an order, on 11 June 2018, directing "that the case will proceed as an application for leave to appeal." The intermediate appellate court ordered additionally the State to file an Answer to Conaway's application. After considering Conaway's application for leave to appeal and the State's Answer, the Court of Special Appeals issued a mandate denying her application for leave to appeal as "read, considered and denied."

## B. Johnson

Johnson was charged in the Circuit Court for Washington County, in 1980, with first-degree rape, second-degree rape, third-degree sexual offense, and assault. After a trial, a jury convicted him of first-degree rape and third-degree sexual offense. The trial judge sentenced Johnson to life in prison on the rape conviction.

In 2015, a judge granted post-conviction relief to Johnson, vacating his conviction and ordered further proceedings. Thereafter, Johnson entered an *Alford* plea.[6] The judge sentenced him to life, suspending all but thirty-six years, one month, and four days. He

---

[6] An *Alford* plea draws its name from *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970). In such a plea, a defendant enters "a guilty plea containing a protestation of innocence." *Bishop v. State*, 417 Md. 1, 19, 7 A.3d 1074, 1085 (2010). The *Alford* plea "waives challenges to adverse rulings on pretrial motions and all procedural objections, constitutional or otherwise, limiting appeals to jurisdictional defects and challenges based on the propriety of the trial court's acceptance of the plea." *Id*.

received also credit for 13,183 days of time served, with five years of supervised probation upon his relief.

Johnson's probation included two standard conditions: (1) report as directed and follow his supervising agent's instructions; and, (2) notify his supervising agent before changing his address, changing his job, and/or leaving the state. There were, additionally, three special conditions: (1) submit to evaluation and attend and complete successfully mental health treatment; (2) have no direct or indirect conduct with the first-degree rape victim; and (3) do not enter or be found near any Sheetz store in Washington County. The conditions included also that he participate in a sex offender tracking and monitoring program, submit to alcohol and drug treatment, and abstain from alcohol, illegal substances, and abusive use of any prescription drug.

In April 2017, Johnson's supervising agent reported that Johnson had traveled to West Virginia on three separate occasions without her permission. Considering that the purpose of these trips was assertedly to drive home a co-worker of Johnson's, the agent recommended that no action be taken at that time against Johnson.

Approximately two months later, Johnson's supervising agent requested a warrant for Johnson's arrest. The agent reiterated the three earlier instances when Johnson drove to West Virginia. She claimed also that he had gone to Ocean City without her permission and, additionally, taken a job at the Walkersville carnival without her permission. The circuit court issued a warrant. Johnson was arrested on 22 August 2017. He has remained incarcerated since that date.

At a hearing on his alleged probation violations, Johnson admitted: (1) to obtaining employment at the carnival from 21-23 July 2017 without the supervising agent's advance permission, and (2) traveling to West Virginia three times without permission. He denied traveling to Ocean City without the agent's permission. The judge found that Johnson had violated the conditions of his probation, but did not announce at that time that he had decided to revoke the probation.

The judge voiced his concern, however, that Johnson was not a "very good candidate for probation." He highlighted Johnson's trips to West Virginia, other places he was not supposed to be, and allegations that he had propositioned a seventeen-year-old female who also worked at the carnival.[7] The young woman addressed the court, without being subject to cross-examination, over defense counsel's objection. She elaborated on Johnson's interactions with her, stating: "he wanted to take me to Ocean City for three days. He wanted to take me and my mom to his car, but me first, and do something to me in the back seat, unknowingly, which I didn't want to do, so I didn't go." After her statement, a recounting occurred regarding some of the evidence from the 1980 trial.[8]

---

[7] Johnson's supervising agent learned that he had taken a job at the carnival through his transgression with the minor. The girl refused Johnson's offer to go to his car and "perform certain acts," alerted her parents, who, in turn, contacted Johnson's supervising agent.

[8] This discussion included, among other things, Johnson's assertion that "the sex was consensual," why a fourteen-year-old girl he was with at the time of the incident had screamed and run away from him, why the rape victim jumped out of his car and ran into a bar, and how the victim stated she did not want initially to prosecute. Defense counsel addressed alleged procedural deficiencies in the 1980 trial and noted that the "alleged conversation at the carnival" did not violate any condition of Johnson's probation.

The State requested that Johnson be returned to prison for ten years. His transgressions, according to the State, demonstrated that he was a danger to the public. Defense counsel, attempting to mitigate Johnson's probation violations, stressed that the trips to West Virginia involved only giving someone a ride home from work, and that he was only reprimanded initially for these "good deed[s]." Also, defense counsel explained why Johnson went to work for three days at the carnival:

> [Johnson] was working [previously] for a gentleman … doing construction type renovations. And [his employer] lost his contract and as a result had to lay off Johnson. And as it's alleged in condition three, that Mr. Johnson worked without permission for three days … the reason was, he had, you know simply was seeking employment in order to get money to pay his bills.
>
> It's my understanding that … the management of the carnival, they found out why he was – what his conviction was, and they let him go as a result of his conviction.

The circuit court judge sided with the State. He found that Johnson committed technical violations of his probation, and that his violations were "a public safety violation." Expressing his concern about Johnson's conduct regarding the seventeen-year-old female at the carnival, but recognizing that such conduct did not violate any of the conditions of probation, the judge stated: "it still troubles me after all of this time that this was something that you engaged in." The judge sentenced Johnson to life, with all but ten years suspended.

**QUESTIONS PRESENTED**

First, we consider the State's threshold query, raised in *Conaway* only, whether certiorari was granted improvidently, as well as certain preservation issues. If that is overcome, we analyze next, as a single query, the flagship question presented by both Conaway and Johnson:[9]

> Does Md. Code, Crim. Proc. § 6-223(e)(4), which provides that a "finding under paragraph (2) of this subsection . . . is subject to appeal under Title 12, Subtitle 3 or Subtitle 4 of the Courts Article," give a right of appeal to a probationer or defendant who receives an enhanced sentence based on a finding under paragraph (2) of § 6-223(e)?

For the reasons that we shall elaborate, the question presented by Conaway is one we shall engage on its merits. As to her and Johnson's common question, we hold that probation violators in their positions must seek appellate review by application for leave to appeal. Because of this holding, we leave Johnson's second and third questions[10] for the Court of Special Appeals to consider in Johnson's pending application for leave to appeal.

---

[9] Johnson's Question 1 encompasses Conaway's query, which was: "[i]n light of the JRA's language, may a defendant obtain appellate review of such a finding or decision by filing a notice of appeal, or is an application for leave to appeal required?"

[10] Johnson's second and third questions are:
> 2. Was the evidence presented at the hearing sufficient to rebut the presumption established by paragraph (1) of Crim. Proc. § 6-223(e), after consideration of the factors set forth in paragraph (2)?
>
> 3. Did the trial court err when it sentenced Petitioner to life in prison, suspending all but forty-six years with credit for time served, for his first technical violation of probation, without following necessary procedures, including compliance with Crim. Proc. § 6-223(d)(3)?

**STANDARD OF REVIEW**

We review questions regarding the appealability of orders or judgments without deference to the decisions below. *Monarch Acad. Baltimore Campus, Inc. v. Baltimore City Bd. of Sch. Commissioners*, 457 Md. 1, 40, 175 A.3d 757, 781 (2017).

**DISCUSSION**

**I.      Was Certiorari Granted Improvidently in Conaway's Case?**

The State claims that we do not have jurisdiction to consider Conaway's appeal and should dismiss it. We choose to exercise our discretion to consider the merits of her question and, consequently, reject the State's urging.

The State maintains that a probationer may not seek certiorari review of a naked denial of an application for leave to appeal. In making this argument, the State relies on Title 12 of the Courts and Judicial Proceedings Article. That Title states, in relevant part: "[a] review by way of certiorari may not be granted by the Court of Appeals in a case or proceeding in which the Court of Special Appeals has denied or granted . . . (5) [l]eave to appeal from an order of a circuit court revoking probation." MD. CODE, CTS. & JUD. PROC. § 12-202.

We have certiorari jurisdiction when the Court of Special Appeals rejects an application for leave to appeal with an opinion elaborating its reasoning or decides not to consider an application as a matter of law.[11] The State points out that there is no indication here that the Court of Special Appeals denied Conaway's application by an opinion on its

---

[11] *Stachowski v. State*, 416 Md. 276, 292-94, 6 A.3d 907, 916-17 (2010).

- 11 -

merits. We have considered numerous times the question of our jurisdiction to consider and grant certiorari review of the Court of Special Appeals's dispositions of applications for leave to appeal. *See*, *e.g.*, *Unger v. State*, 427 Md. 383, 48 A.3d 242, (2012); *Stachowski v. State*, 416 Md. 276, 6 A.3d 907 (2010); *Cianos v. State*, 338 Md. 406, 659 A.2d 291 (1995); *Sherman v. State*, 323 Md. 310, 593 A.2d 670 (1991); *Grayson v. State*, 354 Md. 1, 728 A.2d 1280 (1999).

Adding to its argument that certiorari review was granted in error, the State posits that Conaway raised her appealability claim for the first time in this Court, rendering it also unpreserved and improperly before us.[12] It finds succor for this position in Maryland Rule 8-131(b)(1):

> Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals . . . the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals.

Conaway failed to challenge the Court of Special Appeals's 11 June 2018 Order directing the case to proceed as an application for leave to appeal, so the State urges that her direct appeal claim is being raised for the first time in this Court.

---

[12] In a twist, Conaway retorts that we should decline to address the State's waiver/non-preservation argument because it failed to preserve this issue for our consideration. Ordinarily, we only consider issues that have been raised in a certiorari petition or cross-petition. MD. RULE 8-131(b)(1). Here, the State did not file a cross-petition to present its waiver argument. Rather than wade through the thorns in this thicket, we shall exercise our discretion to consider Conaway's question on its merits, for the sake of judicial economy, because the question presented here is "important, likely to recur and, if answered, would provide guidance to the bench and bar."

Despite the principle embodied in Rule 8-131(b)(1), exceptions may be granted in "extraordinary circumstances." *See Scott v. State,* 454 Md. 146, 189, 164 A.3d 177, 202 (2017), *cert. denied*, 138 S. Ct. 652, 199 L. Ed. 2d 531 (2018) ("[T]his Court has the discretion to consider an issue that was not preserved for this Court's review where 'extraordinary circumstances' provide a reason to do so."). We may exercise our discretion and answer an unpreserved question when the question on which we granted certiorari was one of "public importance . . . which is likely to recur." *Montgomery Cty. v. May Dep't Stores Co.*, 352 Md. 183, 201, 721 A.2d 249, 258 (1998).

The State concedes that the question presented by Conaway "is important, likely to recur and, if answered, would provide guidance to the bench and bar. . . ." Notwithstanding this concession, it claims that it is unnecessary for us to overlook Conaway's non-preservation because the same issue is pending our consideration in *Johnson.*

We agree that this issue is important, likely to recur (as it was argued in *Johnson* in this Court the month following argument in *Conaway*), and our response on the merits will provide useful guidance to the bench and the bar. We shall exercise our discretion and review Conaway's contentions on the merits, despite the non-frivolous procedural arguments raised by the State. In addition, it would seem anomalous, under the circumstances, were we to refuse to decide Conaway's question when we will consider essentially the same question in *Johnson*.

**II.    A Brief Overview of the Justice Reinvestment Act, as Codified in the**

**Maryland Code.**

The JRA, as Senate Bill 1005-2016, was adopted by the Maryland General Assembly.  Governor Hogan signed the JRA into law.  The primary goal of the JRA was to reduce selectively Maryland's prison population and use the resultant monetary savings to provide treatment to offenders before, during, and after incarceration.  It attempted to achieve this purpose through three methods.  First, the JRA reduced the maximum penalties for convictions on drug distribution charges.  Second, it repealed mandatory minimum sentences for nonviolent drug crimes.  Finally, and most pertinent to this case, it limited presumptively the duration of incarceration that may be imposed for a "technical" violation of probation.

A "technical" violation of probation is defined as:

> (m) [a] condition of probation, parole, or mandatory supervision that does not involve:
> (1) an arrest or a summons issued by a commissioner on a statement of charges filed by a law enforcement officer;
> (2) a violation of a criminal prohibition other than a minor traffic offense;
> (3) a violation of a no-contact or stay-away order; or
> (4) absconding.

MD. CODE, CORR. SERVS. § 6-101; *see also* MD. CODE, CRIM. PROC. § 1-101(q) (adopting definition of technical violation from CORR. SERVS. § 6-101).

The codified JRA provisions contain also rebuttable presumptive imprisonment limits for probationers that commit technical violations of their probation.  Those limits are:

1. not more than 15 days for a first technical violation;
2. not more than 30 days for a second technical violation; and
3. not more than 45 days for a third technical violation; and

(ii) for a fourth or subsequent technical violation or a violation that is not a technical violation, impose any sentence that might have originally been imposed for the crime of which the probationer or defendant was convicted or pleaded nolo contendere.

MD. CODE, CRIM. PROC. § 6-223(d).

The presumptive limits may be rebutted if the court, after considering the nature of the probation violation, the facts and circumstances of the crime for which the defendant was convicted, and the defendant's history, finds and states on the record that adhering to the presumptive incarceration limits would "create a risk to public safety, a victim, or a witness." MD. CODE, CRIM. PROC. § 6-223(e)(2). Upon making such a finding, a court may impose a period of incarceration that exceeds those contained in the presumptive limits or it may commit the probationer to the Department of Health for treatment. *Id.* at (e)(3).

The relevant codified JRA sections include appealability provisions, stating: "[a] finding under paragraph (e)(2) of this subsection or an action under paragraph (e)(3) of this subsection is subject to appeal under Title 12, Subtitle 3 or Subtitle 4 of the Courts Article."[13] MD. CODE, CRIM. PROC. § 6-223(e)(4). Title 12, Subtitle 3, permits generally appeals from final judgments of a circuit court.[14] Section 12-302, however, provides a

---

[13] Title 12, Subtitle 4 is titled "Review of Decisions of District Court." Because the relevant decision at issue was issued by a circuit court, this section does not apply to this case. As such, we shall not discuss the provisions within Subtitle 4.

[14] "Except as provided in § 12-302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited,

specific exception for a circuit court order revoking probation: "Section 12-301 of this subtitle does not permit an appeal from an order of a circuit court revoking probation. Review of an order of a circuit court revoking probation shall be sought by application for leave to appeal." MD. CODE, CTS. & JUD. PROC. § 12-302(g).[15] There's the rub.[16]

## III. Was an Application for Leave to Appeal the Required Process for Conaway and Johnson to Seek Appellate Review?

Conaway asserts that a probationer in her position is granted a right of direct appeal pursuant to Md. Code, Cts. & Jud. Proc. § 12-301. An application for leave to appeal was an unnecessary predicate or alternative in her situation. The State claims that, in the same scenario, a probationer's right of appeal from an order of probation violation and resultant incarceration is governed by Md. Code, Cts. & Jud. Proc. § 12-302(g), which directs specifically an application for leave to appeal.

In a similar vein, but relying on a different code provision, Johnson claims that Md. Code, Crim. Proc. § 6-223(e)(4) gives a probationer in his position a right of direct appeal.[17] He notes how the JRA changed criminal procedure, including the manner in which trial courts may address the subset of "technical" violations of probation, in support of this

statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." MD. CODE, CTS. & JUD. PROC. § 12-301.

[15] The Court of Special Appeals relied on § 12-302(g) as the basis for ordering the case to proceed as an application for leave to appeal.

[16] WILLIAM SHAKESPEARE, HAMLET, Act III, Scene I, Lines 66-67.

[17] Conaway invokes, in the alternative, that Md. Code, Cts. & Jud. Proc. § 12-301 grants a probationer the right to direct appeal.

- 16 -

position. The State retorts that the plain language of § 6-223(e) is dispositive of the question. Even if its plain language does not control the outcome, the State advances that the Legislature intended for a probationer in Johnson's shoes to challenge the incarceration for a technical violation of probation only through an application for leave to appeal.

In order to address properly Petitioners' assertions, we turn to the principles (often referred to as "canons") of statutory interpretation.

### i. Statutory Interpretation.

"The cardinal rule of statutory construction is to ascertain and effectuate the General Assembly's intent. '[O]ur primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional, or part of the [Maryland] Rules.'" *Ingram v. State*, 461 Md. 650, 661, 197 A.3d 14, 20 (2018). There are a host of principles in aid of divining legislative intent.

Every analysis begins with asking whether the relevant statutory scheme evinces a plain meaning. We read "the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Id.*, 197 A.3d at 21. If the statutory language is clear and unambiguous, our analysis may end. *Id.* at 662. However, when the "language of the statute is subject to more than one interpretation, it is ambiguous. . . . " *Spangler v. McQuitty*, 449 Md. 33, 49, 141 A.3d 156, 166 (2016). In parsing whether plain meaning or ambiguity is the case, we view the relevant statutory scheme as a whole, rather than seizing on a single provision. When confronted by ambiguous language, we turn typically to "the statute's legislative history, prior case law,

- 17 -

statutory purpose, and the statutory structure" to assist in divining the intent of the General Assembly. *Id.* Additionally, "absurd results in the interpretive analysis of a statute are to be shunned." *City of Bowie v. Prince George's Cty.*, 384 Md. 413, 426, 863 A.2d 976, 983 (2004) (internal quotations omitted).

ii.     Maryland Code, Courts and Judicial Proceedings, Title 12, Subtitle 3.

Section 12-302(g) is not ambiguous. It states clearly that a probationer must seek review of a revocation of probation order through an application for leave to appeal.[18] This provision is unambiguous in light of the statutory structure of Subtitle 12 of the Courts and Judicial Proceedings Article. Section 12-301, while providing generally the right to direct appeal of a circuit court judgment, carves out a clear exception, in § 12-302, requiring applications for leave to appeal by which to challenge orders revoking probation.

Conaway asserts that § 12-302(g) applies only to an order revoking probation, but not the judgment of incarceration. As this logic goes, because that section is silent on the

---

[18] The application for leave to appeal review process shares certain aspects of the direct appeal process. Applications for leave to appeal are decided by three-judge panels of the Court of Special Appeals, as are direct appeals in criminal cases (which could be the result if the application is granted). The three-judge panels are assisted in their consideration by research and memoranda prepared by staff attorneys, much like direct appeal panels are assisted by their law clerks and often staff attorneys in deciding such cases. There are some similarities also in an application for leave to appeal in the Court of Special Appeals and a petition for writ of certiorari in the Court of Appeals. Of course, one who files a cert petition has had an appeal of right already while one filing an application for leave to appeal in the Court of Special Appeals obviously has not. Neither countenance oral argument, but the objective of both processes is the ascertainment of whether there is something about the questions raised in either context that merits further consideration. Of course, although formal briefs are not required in either instance, legal memoranda (especially where counsel are involved) are filed often. Both processes are essentially winnowing devices designed to sift precious metal from ordinary silt.

judgment entered following the revocation order, appealing the judgment does not fall within the ambit of § 12-302(g) and can thus be pursued separately by filing a notice of appeal.

In support of this, she claims that, although admittedly atypical, it is not unprecedented for different aspects of a seemingly related, unitary, or integral disposition be open to different appellate review avenues. For instance, § 12-302(e)(2) provides that an appeal from a final judgment entered following a guilty plea must be sought by filing an application for leave to appeal. Section 12-302(e)(3) states that a defendant may appeal a final judgment entered following a conditional guilty plea in accordance with the Maryland Rules.[19] Hypothetically, it remains possible that a defendant who enters a conditional guilty plea to preserve the right to appeal regarding a pretrial issue and also has a claim of error regarding any other aspect of the plea or sentence would have available the parallel tracks of a notice of appeal and an application for leave to appeal. Conaway concludes by stating that the difference in the language between subsections (e) and (g) of § 12-302 indicate that subsection (g)'s requirement of an application for leave to appeal applies only to the order revoking probation, but not to the sentence entered as a result of the revocation.

Holding that Conaway is required, pursuant to § 12-302(g), to file an application for leave to appeal to challenge the revocation of probation, but may pursue a direct appeal

---

[19] Md. Rule 4-242(d)(2) provides a right to appeal "limited to those pretrial issues litigated in the circuit court and set forth in writing the plea." A committee note states "[t]his Rule does not affect any right to file an application for leave to appeal under Maryland Code, Courts Article, § 12-302(e)(2)."

regarding the sentence entered resulting from that violation, is an outcome that neither the Legislature nor we endorse. Such a result is rife with the potential for judicial inefficiency and inconsistencies by bifurcating essentially one matter into two separate, procedurally-distinct proceedings.

In aid of her cause, Conaway minimizes the efficacy of the leave to appeal process. She deems it "unimaginable" that the Legislature would have intended probationers to use an application for leave to appeal to review a court's decision to exceed the presumptive incarceration caps for technical violations. She argues that the application for leave to appeal process does not provide "meaningful or timely review" of a court's decision to exceed the presumptive incarceration limits for technical violations of probation. Conaway calls appellate review that depends on granting an application for leave to appeal "practically meaningless" as a procedural protection.[20] Conaway relates statistics regarding the relatively low rate at which applications for leave to appeal are granted. This

---

[20] Conaway doubles-down on this position by implying that the application for leave to appeal process denies a probationer meaningful appellate review. She states:

> That the General Assembly cared enough to mandate that certain findings and decisions regarding punishment for technical violations were 'subject to appeal' implies that it anticipated the probationer would actually get to appeal, that appellate review would be a meaningful check on excessive incarceration. As a practical matter, the only way to do this was to give such probationers a right to appeal.

We disagree. The application for leave to appeal process affords undeniably a probationer an opportunity for appellate review. Second, the State's right of review is often by way of application for appeal. Third, the Office of the Public Defender chooses sometimes to represent a defendant/probationer in the application for leave to appeal process and file papers on behalf of him/her, even though not obliged to do so.

argument closes by stating that the only practical way to give a probationer a meaningful check on excessive incarceration would be through the full briefing and oral argument attendant to a direct appeal (a position which assumes that submission on briefs would not occur).

There is no doubt that the rate at which applications for leave to appeal are granted is low.[21] The intermediate appellate court, however, denies applications for leave to appeal for a variety of reasons. As Judge Wilner stated aptly:

> Applications are denied for any of several reasons. Many are untimely; many are deficient because they do not "contain a concise statement of the reasons why the judgment should be reversed or modified" or "specify the errors allegedly committed by the lower court," as required by Rule 8-204(b)(2). Some are denied because, after examining the record, we find that the relevant facts are not as alleged by the applicant and do not support his allegations of error or entitle him to any relief. The applicant may, for example, allege that the judge said or did something wrong, yet when we examine the record, we find that the judge never actually said or did the thing alleged. To assist in the efficient handling of both the gross caseload and the increase in it, we have generally not specified any reasons when we summarily deny an application for leave to appeal, but simply note that the application has been read and considered and is denied.

---

[21] Based on publicly-available statistics, it appears the Court of Special Appeals ruled on 639 applications for leave to appeal, relating to violations of probation, from fiscal years 2008 through 2017. Of those 639 applications, only four were granted, or about 0.62 percent. *See, e.g.*, Md. Judiciary, *2017 Statistical Abstract*, p. 11, Table COSA-3; Md. Judiciary, *Annual Statistical Abstract: Fiscal Year 2014*, p. COSA-4, Table COSA-3; Md. Judiciary, *Annual Statistical Abstract: Fiscal Year 2011*, p. COSA-4, Table COSA-3; Md. Judiciary, *FY 2010 Annual Statistical Abstract*, Table COSA-3. Although these statistics seem grim, the tables give only raw statistics and do not include a qualitative analysis as to why the applications were denied.

*Hernandez v. State*, 108 Md. App. 354, 364, 672 A.2d 103, 108 (1996), *aff'd*, 344 Md. 721, 690 A.2d 526 (1997).

In this instance, Conaway was required, by § 12-302(g), to seek review of the revocation of her probation and sentence by application for leave to appeal. She proceeded in that manner and received an unfavorable result after the Court of Special Appeals read and considered her application. In addition, Conaway was afforded multiple opportunities by the trial court to avoid a situation where her probation would be revoked. Unfortunately, Conaway did not comply with the conditions of her probation and was sentenced to incarceration. The Court of Special Appeals was correct in determining that Conaway was required to proceed by an application for leave to appeal pursuant to § 12-302(g).

  iii.  Maryland Code, Criminal Procedure §§ 6-223 and 6-224.

Johnson's flagship contention (and Conaway's alternative thesis) is that § 6-223(e)(4) provides a probationer with a right of direct appeal. He cites principles of statutory construction, arguing that the plain meaning of § 6-223(e)(4) supports his position. Next, he claims that interpreting that section to confer the right to file an application for leave to appeal would render the provision superfluous, and thus, in conflict with a principle of statutory construction. Johnson concludes this argument by asserting that the purpose and goals behind the JRA confirm that § 6-223(e)(4) confers a right of direct appeal.

Conaway rejoins, alternatively to her chief argument, that the plain language, legislative history, and context of the appealability provisions in Md. Code, Crim. Proc.

§§ 6-223 and 6-224 give her the right to file a notice of direct appeal to challenge the findings and decision regarding punishment for technical violations of probation.

In addition to the presumptive limits of incarceration outlined above, § 6-223 of the Criminal Procedure Article gives the circuit court the power to revoke probation at any time. Section 6-223(e)(4) of that Article states "[a] finding [that adhering to the limits on the period of incarceration would create a risk to public safety, a victim, or a witness] is subject to appeal under Title 12, Subtitle 3 or Subtitle 4 of the Courts Article."

There is no ambiguity in the plain language of the statute. It is clear to us an appeal of a circuit court's order revoking probation is subject to the provisions in Title 12.

Johnson and Conaway seize upon the General Assembly's omission of "application for leave to appeal" language where the word "appeal" appears in § 6-223. They claim that, in other instances, the General Assembly, when it decided to require a party seeking appellate review do so by filing an application for leave to appeal has done so explicitly. *See*, *e.g.*, MD. CODE, CORR. SERVS. § 10-210 (stating: "[a] party aggrieved by the decision of the circuit court may file an application for leave to appeal to the Court of Special Appeals in accordance with the Maryland Rules."); MD. CODE, CTS. & JUD. PROC. § 3-707 (providing: "[i]f a judge refuses to issue a writ of habeas corpus sought for the purpose of determining the right to bail . . . a petitioner may apply to the Court of Special Appeals for leave to appeal from the refusal."); MD. CODE, CRIM. PROC. § 7-109(a) (stating: "[w]ithin 30 days after the court passes an order in accordance with this subtitle, a person aggrieved by the order, including the Attorney General and a State's Attorney, may apply to the Court of Special Appeals for leave to appeal the order."). As this argument goes, by mandating

that an adverse finding against a probationer is "subject to appeal" (versus "subject to application for leave to appeal"), the General Assembly evinced its intent to confer on technical probation violators a right to appeal directly, without an application for leave to appeal.

Reading §§ 6-223, 6-224, and 12-302(g) as a coherent statutory scheme, we appreciate how Petitioners arrived at their tunnel-vision that there exists some inconsistency, however slight, creating potentially an ambiguity. Section 6-223(e)(4) of the Criminal Procedure Article uses the word "appeal" in its provision concerning sentencing of a probationer found to have committed a technical violation. Section 12-302(g) requires an application for leave to appeal. The parties' ambiguity argument falls flat, however, when viewing Titles 6 and 12 though a wider lens, as opposed to focusing on a single Subtitle.

Analysis of the interplay between Title 6 and Title 12 ameliorates any concern regarding the asserted inconsistency. Title 12 contains provisions requiring (albeit under different circumstances) *both* direct appeal and applications for leave to appeal. *See, e.g.* MD. CODE, CTS. & JUD. PROC. § 12-301 ("Except as provided in § 12-302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court."); *see also* MD. CODE, CTS. & JUD. PROC. § 12-302(g) ("Section 12-301 of this subtitle does not permit an appeal from an order of a circuit court revoking probation. Review of an order of a circuit court revoking probation shall be sought by application for leave to appeal."). Reconciling the "appeal" language in § 6-223 with Title 12, it seems evident to us that the General Assembly's use of the word "appeal," in lieu of "application

- 24 -

for leave to appeal," was intended actually to avoid creating confusion. As discussed above, § 12-302(g) is an explicit exception to the general appealability provisions found elsewhere in Title 12. Because the plain language and statutory interplay eliminate any ambiguity from the above-referenced provisions of the Maryland Code, we need not delve any deeper into legislative extrinsia to attempt to discover the General Assembly's intent in enacting the JRA. The language of the relevant statutory scheme is plain.

Conaway and Johnson continue by claiming that interpreting § 6-223(e)(4) as conferring merely the right to an application for leave to appeal would render that provision superfluous, meaningless, and redundant. They support this contention by stating that if the Legislature intended to require a probationer to seek leave to appeal to challenge a finding under §§ 6-223(e)(2) or (e)(3), and it thought that Md. Code Cts. & Jud. Proc. § 12-302(g) already required that result, there would have been no reason to enact § 6-223(e)(4).

Contrary to Conaway and Johnson's assertion, holding that § 6-223(e)(4) gives a probationer only the right to file an application for leave to appeal does not render that provision superfluous, meaningless, or redundant. Comparing the purpose of the JRA with its plain language, it appears to us that the Legislature sought to clarify that findings made pursuant to the new limitations on a court's discretion (i.e. sentencing a probationer to a term of incarceration exceeding the presumptive limits outlined in the JRA) were subject to appellate review by means of an application for leave to appeal. Rather than superfluous, it appears that the language in § 6-223(e)(4) assists in making clear that findings of

violation and the resultant increased sentence under §§ 6-223(e)(2) and (e)(3) are subject to appellate challenge by an application for leave to appeal, as opposed to via direct appeal.

## IV.  Johnson's Other Contentions.

Johnson queries further whether the evidence produced at his revocation hearing was insufficient to support a finding that he created a risk to public safety.  Thus, because of this deficiency, the trial court erred by imposing a sentence above the presumptive limit for a first technical violation of probation.

The State responds that this issue was not preserved properly for our review.  To preserve an issue for appellate review generally, the complaining party must have raised the issue in the trial court. MD. RULE 8–131(a).  If a party fails to make a contemporaneous objection in the trial court, the general rule is that he or she waives that issue on appeal. *Nalls v. State*, 437 Md. 674, 691, 89 A.3d 1126, 1136 (2014).  Johnson did not object at any of the requisite times to preserve this issue.  He failed to object when the trial judge discussed his probation violations, the original underlying crime, his history, the finding that his technical violations were "public safety violations," or when the judge read his sentence.  As such, the issue is waived.

As discussed in Section III, Johnson has no right of direct appeal and must file an application for leave to appeal (which he did).  His application for leave to appeal remains pending, where he may have this argument considered.  We shall not usurp the Court of Special Appeals's duty and, thus, abstain from deciding this question.

Johnson's final contention is that even if the evidence produced was sufficient to sentence him beyond the presumptive limits of incarceration, his sentence should be

vacated because the trial judge did not revoke expressly his probation and did not state on the record why he imposed on Johnson a ten-year sentence. Moreover, Johnson claims his right to due process was violated because he was not permitted to cross-examine the seventeen-year-old female that addressed the court during the sentencing phase.

The State responds that Johnson's claims on this revocation issue are not cognizable for our review. Even Johnson, in his brief, recognizes that "[r]eview of an order of a circuit revoking probation shall be brought by application for leave to appeal." MD. CODE, CTS. & JUD. PROC. § 12-302(g).

Consistent with our disposition of the flagship questions presented by Johnson and Conaway, this issue is not before us properly and not cognizable for our review. Johnson may pursue this challenge through his pending application for leave to appeal.

> **11 JUNE 2018 ORDER OF THE COURT OF SPECIAL APPEALS DIRECTING CONAWAY TO PROCEED BY APPLICATION FOR LEAVE TO APPEAL AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

> **18 NOVEMBER 2018 ORDER OF THE COURT OF SPECIAL APPEALS DISMISSING JOHNSON'S DIRECT APPEAL AFFIRMED. COSTS TO BE PAID BY PETITIONER.**